KINGSTON (ROSS v.). See Case No. 12,076

---

## Case No. 7,823.

### KINGSTON v. WILSON.

[4 Wash. C. C. 310.] [1]

Circuit Court, Pennsylvania.[2] Oct. Term, 1822.

CONSIGNEE — DUTIES OF — INTEREST ON SPECIAL CONTRACT—CUSTOM TO INSURE CARGO—DEL CREDERE COMMISSION—BILL OF EXCHANGE—LIABILITY OF CONSIGNEE FOR NOT ACCEPTING—INDORSER OF BILL OF EXCHANGE.

1. A consignee impliedly contracts not only for his fidelity in the disposition of the cargo, and

[1] [Originally published from the MSS. of Hon. Bushrod Washington. Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

[2] [District not given.]

for the exercise of his best judgment, but for the exercise of a sound judgment in the management of the business confided to him. If he is authorised to direct the destination of the ship with a view to the best market, it is his duty to make all necessary inquiries to enable him to find out where the best market is. But if the consignment be general, he is not bound to look out for any other market than that to which the vessel is consigned; and he might make himself liable by sending her to any other, should a loss be there sustained.

[Cited in Rogers v. Bradford, 1 Pin. 432.]

2. From what time interest is to run on a special contract.

3. A custom of London was proved, that consignees having liens on the cargoes consigned to them insure them against fire, and that the consignee in this case was always in the habit of acting conformably with the custom; but no evidence was given of a policy in this particular case. If the custom is intended for the benefit of the consignor, the consignee is bound to insure, and if he do not, he stands insurer himself, and is entitled to the premium. Aliter, if the custom be merely for the protection of the interests of the consignor.

4. A del credere commission is not demandable when the sale is made on credit, but is nevertheless paid for in cash in consideraton of a deduction of a certain per centage.

5. In what cases a consignee is liable for damages to the consignor for not accepting his bill for the balance in his hands.

6. The indorser of a bill of exchange is not entitled to recover of the drawer the damages incurred by the non-acceptance of the bill, unless he has been obliged to pay them, or is liable to pay them.

This was an action brought against the defendant, a London merchant, to recover damages for unfaithful conduct in the sale of a cargo of hides, by the Three Sisters, Ansley, master, carried from the river La Plata to London, in the year 1803.

WASHINGTON, Circuit Justice (charging jury). There are two special counts in this declaration, which state in substance, that the defendant, in consideration that the Three Sisters, with her cargo, should be consigned to him, and of the commissions to be paid him on that account, undertook to dispose of the said cargo at the best market at which the same could be sold; and aver that Amsterdam afforded the best market, of which the defendant had notice. The breach is, that the defendant unfaithfully sold the cargo at London, by which a great loss was sustained by the plaintiff. The third count is the general one for money had and received. If the special case laid in this declaration, be made out in evidence to the satisfaction of the jury, the law arising out of it may be stated in a few words. A consignee impliedly contracts, when he accepts the consignment, not only for his fidelity in the disposition of the cargo, and for the exercise of his best judgment, but for the exercise of a sound judgment in the management of the business confided to him. If he be authorised to direct the destination of the ship, with a view to the best market at which the cargo can be sold,

it is his duty, by reasonable inquiries, to find out where that market is, so as to afford to his employer the benefit of it. But if the consignment be general, and in the usual form, so as to leave no option to the consignee to select a market, other than that to which the cargo is destined, we are not prepared to admit the soundness of the doctrine contended for, that the consignee is bound to send the cargo to any other market, though it should turn out to be better than the one to which the cargo is sent. It may, on the contrary, be at least questionable, whether, in such a case, the selection of some other market would not be made at the risk of the consignee, should the change turn out unfavourable to the interest of his principal.

The questions, however, which you have to decide are, whether any contract, express or implied, was made between the plaintiff and defendant in relation to the cargo of the Three Sisters; and if any, what it was. To enable you to decide these questions, I shall lay before you a brief summary of the material facts relative to this ship and her cargo. We take her up at Buenos Ayres in the summer of 1802, where we find Captain Ansley, her commander, frustrated in his expectations of receiving a cargo from Saratier, under the charter party which he had entered into with the plaintiff, the owner of the ship, before she sailed from Philadelphia. After many fruitless efforts of the captain to obtain a cargo on freight, he met with a Mr. Maccaughey, of Buenos Ayres, who agreed to make him an advance of £12,000 sterling, to be invested by Ansley in a cargo of hides, from the port of Monte Video to Falmouth and a market, &c. taking, on the sum so advanced, at the rate of ten per cent. as a premium for the same; for payment of which, Ansley was to sign bills of lading for a reimbursement at London, Havre de Grace, Amsterdam, Rotterdam, Hamburgh, Bremen or Ostend, which said Ansley was to leave in the hands of his consignee; but it was to be understood, that the said sum, so advanced, was not to become payable sooner than ninety days from delivery, in order that no sacrifice might be made of the cargo; that in every case, the opinion and consent of Ansley was to be taken with respect to the sales of the cargo;—Maccaughey to guaranty to Ansley all and every risk of every nature and description soever, (irregular papers excepted) from the day of his departure, till the day of his delivery at the port of his discharge; and in the event of loss or capture, he agrees to exonerate Ansley, and all others concerned in the said ship, for the above advance, nevertheless making Ansley liable for the premium of insurance. This contract was not finally executed until August, 1802; but all the material parts of it were communicated by Ansley to the plaintiff, in his letter of the 31st of July of that year.

The bills of lading for the cargo were filled up by Ansley to order, and delivered to Maccaughey; and on the 29th of October, Ansley received from Maccaughey his letter of instructions, in which he states, that when the sum advanced on account of the cargo, and the insurance are discharged, agreeably to contract, at his port of delivery, the remainder of the nett proceeds would be at his, Ansley's disposal. He further mentions, that he shall address Ansley either to Sir Francis Baring & Co. or to Thomas Wilson, which cannot be determined until his arrival off Falmouth, where he will receive his orders. The ship, with her cargo, arrived at Plymouth, on or about the 28th of February, 1803, and it would seem that Ansley was in London the next day for the purpose of inquiring to whom he was addressed, and of receiving his orders. This was, in fact, to depend upon the contingency, whether the defendant had accepted Maccaughey's bill for £10,000 or not? If he did not, the entire management of the business was to devolve on Sir Francis Baring & Co. to whom the bill of lading was enclosed by Maccaughey. The defendant having declined accepting the bill, Ansley received his orders in writing from Sir Francis Baring & Co. on the 1st of March, requiring him to proceed immediately to Amsterdam, and promising to indemnify him for so doing. It would seem as if some dispute had arisen between these parties respecting this consignment and its destination; for on the 2d of March, we find an agreement executed by Sir Francis Baring & Co., Ansley, and the defendant, by which it was stipulated that the Three Sisters should proceed with her cargo to London, and on her arrival, her cargo to be placed in the hands of Kymer, M'Taggart & Co. subject, in the first instance, to the payment of £10,000 to Sir Francis Baring & Co. being so much assigned to them out of the cargo by Maccaughey, which payment being made, they, Sir Francis Baring & Co. relinquished all right over the cargo to Wilson and Captain Ansley. In consequence of this agreement, the ship proceeded to London and delivered her cargo to Kymer, M'Taggart & Co., out of which the £10,000 were paid to Sir Francis Baring & Co. in August, September and October, 1803.

Upon these facts the question arises, whether the contract laid in the declaration is made out? It must be admitted that the cargo, when purchased by Ansley, was on account of the plaintiff, and that Ansley so considered it up to the 1st or 2d of March, when, it is presumable, he was made acquainted with the contents of the plaintiff's letter of the 21st of December, 1802, to Sir Francis Baring & Co. in which the plaintiff mentions the shipment of hides from Buenos Ayres to the address of Sir Francis Baring & Co. as having been procured under a contract which Captain Ansley had taken upon

himself, without authority, to form with some Spaniards, and in which the writer positively disclaims any interest, but directing his correspondents to secure his freight. This letter was confirmed by another to Ansley himself, dated the 31st of the same month, in which he states that he has no concern in the cargo, but merely requires that his freight should be secured. But whoever might be the real owner of the cargo, Ansley was the ostensible owner to all the world, the name of the plaintiff having been carefully kept out of view in the contract between Ansley and Maccaughey, and the other papers connected with it, and this too by the express desire of Maccaughey, who refused to make the advance, if the name of the plaintiff was introduced into the contract. The interest which Maccaughey had in the cargo, under the contract with Ansley, subjected the latter to the orders of Sir Francis Baring & Co., to whom the bills of lading were indorsed. The order which he received from that house on the 1st of March, to proceed to Amsterdam, was the next day revoked by the agreement entered into between them, Ansley and Wilson, by which the cargo was to be landed at London, and placed in the hands of Kymer, M'Taggart & Co. for the purpose of paying £10.000 to Sir Francis Baring & Co. out of the proceeds; after which all the rights of that house in the cargo, as indorsers or owners of the bills of lading, were to vest in the defendant, and in Captain Ansley.

These being the facts of the case, how is it possible to make out a contract of any kind, express or implied, between the plaintiff and the defendant? For aught that appears to the jury, they were entire strangers to each other, until after the landing and sale of the cargo at London. The contract cannot be considered as having been made through the instrumentality of Maccaughey; for he had not only excluded, as far as he could, the plaintiff from any interest in the cargo, but his orders to Ansley, and to his agents Sir Francis Baring & Co. were all given in reference to the lien which he had on the cargo; and that being discharged, it was unimportant to him what became of the cargo. If it could be supposed that Ansley was the agent of the plaintiff in respect to the cargo, (a point which it would be difficult to make out after the letters of disclaimer before mentioned), he proves that the defendant acted in all respects in conformity with his orders, in relation to the disposition of the cargo. If Sir Francis Baring & Co. were the agents of the plaintiff, we have already seen that the landing and sale of the cargo at London were by his express consent and agreement; besides which, as owners of the bill of lading, they had a right to direct the destination of the cargo, and could be answerable only to their employers for a breach of orders. But as to third persons, acting under their orders, or

fairly contracting with them, they are to be considered as the owners. If neither of the above parties can be considered as the agents of the plaintiff, so as to fix the defendant with an express contract, such as is stated in the declaration, there is no ground for raising an implied contract; since the defendant acted under an express contract with the assignee of the bill of lading, and the only owner of the cargo of whom he had any knowledge. For although the plaintiff was, long after these transactions had terminated, decided to be the owner of the cargo, by an award made in Philadelphia, yet the defendant was justified in treating Ansley as the owner, on the ground of his ostensible character as such, and a fortiori, on the ground of the plaintiff's letters of disclaimer. But even if an implied contract could, upon any principle, be raised, it could not be of the nature of the one laid in the declaration, to cause the cargo to be disposed of at the best market that could be obtained. On the contrary, I should consider the implied contract of a general consignee to be to sell at the market to which the cargo is sent. Were it even true that the defendant was bound by such a contract as that laid in the declaration, it might become a question of serious consideration with the jury, whether he did not consult and promote the interest of the plaintiff by the very conduct which he pursued. It will be kept in mind, that he had no control whatever over this cargo until the sum of £10,000 had been raised out of the proceeds, for the use of Sir Francis Baring & Co. The question then would be, after a comparison of the Amsterdam with the London markets, would it have been a prudent measure to re-ship the unsold part of the cargo, burthened as it was with the import duties, warehouse rent, premium of fire insurance, and other expenses? However this might be, it is a complete answer to this part of the plaintiff's demand, that no evidence of a contract on the part of the defendant to select the best market has been given. Nor does it appear that the defendant was directed at any time, by the plaintiff, or by any person acting as his agent, to send such unsold part of the cargo to any other than the London market; and consequently, the plaintiff is not entitled to a verdict on either of the special counts.

The residue of the cause comes under the general count for money had and received, and consists of the following objections to the defendant's account:

1. The difference of interest upon the money advanced by Maccaughey, between ninety days after the delivery of the cargo in London, and the periods at which the £10,000 were paid to Sir Francis Baring & Co. upon the sum so paid; the plaintiff contending, that though the sum advanced by Maccaughey was not, by the contract, to become due before the end of ninety days from the delivery of the cargo, it did not follow that it was to become due at the expiration of the ninety

days, or indeed at any time prior to the actual payment of the £10,000 bill drawn by Maccaughey, and accepted by Sir Francis Baring & Co. The court cannot give its sanction to this agreement. The advance was in fact made by Maccaughey at Buenos Ayres, and the risk which he undertook to run was to continue to the time of the delivery of the cargo, immediately after which, the sum advanced would have become due. if Maccaughey had not stipulated to postpone the period for ninety days, with a view, as the contract declares, to prevent a sacrifice being made of the cargo to meet the said advance. The obvious meaning then of the contract was, that, at the expiration of the ninety days, payment was to be made, and consquently, at that period, interest began to run. With this subject, the payment of Maccaughey's bills, accepted by Sir Francis Baring & Co. had nothing to do.

2. The next objection is to the charge of the premium of insurance against fire, in respect to the cargo of the Three Sisters. The ground of the objection is, that no policy has been produced, or evidence given, that this cargo was insured against fire. It is proved by Parvin, a clerk of the defendant, that it was the general custom of the London merchants, having liens on goods consigned to them, to make general insurances against fire, and to charge each owner with his proportion of the premium. He does not know that the ·defendant made any particular insurance in relation to this cargo; but he was in the practice of insuring conformably with the custom. The only question is, whether the custom was one intended for the security of the owner of the goods, or merely for that of the consignee in relation to his lien on them. If the former, and it is sufficiently established to your satisfaction as obligatory on the consignee, it placed the defendant in the situation of an insurer, in case of loss, if he failed to protect the goods by an insurance: since the owner had quite·as good reason to expect that the insurance would be made by force of the custom. as if the defendant had been in the regular habit of effecting insurances upon cargoes consigned to him by the plaintiff; in which case, he would be liable, as the insurer. in case of loss, and consequently entitled to the premium in case of safe arrival. But if the custom has a view merely to the security of the consignee, he might, if he chose, waive the benefit of it; and in that case, it should appear that this cargo was protected, either by a special, or general policy.

3. The charge of a del credere commission is objected to, because, it is contended by the plaintiff, that though the cargo was sold on credit, still ready money was paid in consideration of a deduction of two and a half per cent. from the sales. On the one hand, it is insisted by the defendant's counsel, that all the sales were made, and continued, as credit sales. The question then, as to the correct-

ness of this charge, will depend altogether upon this controverted fact. If the plaintiff be correct in his statement of the evidence, the charge is inadmissible, since the defendant ran no risk as a guarantee of the debts; if the defendant is right as to the fact, then the charge is proper, being consistent with the established custom, as proved in the cause.

4. The next objection is to the charge of sixpence duty per hide, with the addition of twelve and a half per cent. on it, instead of fivepence, which, upon the arrival of the Three Sisters at Plymouth, the defendant stated in a letter to Captain Ansley, was then the duty to be paid upon the importation. This statement, it is agreed, was perfectly correct at the time it was made; but an act of parliament was passed soon after the landing of this cargo, increasing the duty to the sum charged upon cargoes previously landed. The letter of the defendant to Captain Ansley is viewed by the plaintiff's counsel in the light of a contract, obligatory upon the defendant, to charge no higher duty than what was then imposed by law. It would be a waste of time to urge arguments to show the fallacy of this construction of the letter; it may be sufficient to say, that it is without the slightest foundation in point of law.

5. The facts which give rise to this objection may be stated in a few words. After the award in Philadelphia, by which the right of the plaintiff to the cargo of the Three Sisters was established, Ansley, by the importunity of the plaintiff, drew a bill in favour of the plaintiff, on the defendant, for about £1800, the supposed balance remaining in his hands of the proceeds of the cargo; but under a promise of the plaintiff. as Ansley has deposed, that the drawer should not be liable to damages, should the bill return protested. The bill, however, was indorsed by the plaintiff, and upon its presentation, was protested for non-acceptance, on the ground that the accounts, not being made up, the defendant could not say what balance, if any, was due to the plaintiff. Soon afterwards the defendant ascertained that only a balance of £370 was due, which, by a letter to the plaintiff. he offered to pay. The present objection grows out of a claim of the damages upon the sum of £370, to which amount, it is contended by the plaintiff, the bill ought to have been accepted. I am very strongly inclined to think that, if the owner of the cargo will draw a bill at hazard upon his consignee, before he is apprized of the balance due to him, he does so at the peril of paying the damages upon the return of the bill. without a claim for remuneration by the payer, if at the time of his refusal to accept. the balance was not ascertained. so as that he could know to what amount he might, with safety, accept the bill. But however this may be. the plaintiff is not entitled to these damages. unless he has himself paid them, or is at least liable to pay

them, as to which, no evidence has been given.

6. In the order given by Ansley to Maccaughey to cause insurance to be effected in London on the cargo of the Three Sisters, he directed $18.000 to be insured, valuing each hide at eighteen shillings. He observes in a postscript to his letter, that he does not insure the freight, having included that in the value of the hides. The policy was effected by the defendant upon this order, but no mention was made in it that the freight was included in the value of the cargo. The plaintiff insists that, in consequence of this omission, he was prevented from claiming a return of premium upon his policy on the freight effected in Philadelphia, to which he was entitled if he could have shown that the freight had been previously insured in London, and that he is consequently entitled to claim of the defendant the amount of that premium. To this demand the following unanswerable objections have been made:

1. That it does not appear that the freight was insured in Philadelphia.

2. Or if it was, that a return of premium had been refused.

3. If it was refused, still payment might have been enforced upon proof that the freight was in fact insured in London, although it was not so stated in that policy. And

Lastly, that the defendant was not directed to have it so stated; the circumstance of the freight being included in the value of the hides being mentioned to Maccaughey in Ansley's letter, merely for his information, and for the purpose of accounting for the freight not being separately insured.

Verdict for plaintiff for $63.