## JUSTICE ET AL. v. BROCK.
### (No. 721.)

Factors—Duties and Liability—Negligence—Suit for Advances—Instructions—Trial—Burden of Proof—Argument—Right to Open and Close.

1. A factor is not obliged to sell at the request of his principal at a price which would be less than his lien for advances, commission, and just charges, unless the principal pays or tenders such advances and charges, but he is bound to the exercise of ordinary care, skill and diligence to obtain the market value of the consigned property, and may not withhold the same from the market against the directions of the principal, without incurring liability for damages resulting therefrom, if the exercise of ordinary care, skill and diligence would have resulted in a sale at a price which would have been satisfactory to the principal and sufficient to pay the factor's advances and charges.

2. Upon a simple consignment of wool to be sold on commission, without any instruction, direction, or advice communicated by the principal to the factor at the time of the consignment, the principal had the right to say when the wool should be sold, and at what price, so long as it did not impair the factor's right to reimbursement out of the proceeds for all his advances and charges.

3. The rule requiring a factor to exercise ordinary care, skill and diligence to obtain the market value of the consigned property refers to a market available to the factor.

4. The fact that property like that consigned and of the same or higher quality may have been sold at the market quotations furnished from time to time by the factor to the principal will not of itself be sufficient to entitle the principal to recover damages for the failure of the factor to sell the consigned property, where it appears that the factor was diligent and in good faith endeavoring to sell.

5. A factor is not an insurer of sale or price and does not agree that he will commit no error, but is liable only for negligence, bad faith or dishonesty.

6. An instructed factor who has in good faith held the consigned property for a rise in price, will not be liable for damages resulting from the fact that the market weakened thereafter, if he was diligent and faithful in trying to sell at a satisfactory price and sufficient to pay his advances and charges, for, under the circumstances, the principal will be presumed to have approved the factor's conduct in

so holding the property, and at most, the failure to sell prior to such weakening of the market would only be a mistake in judgment on the part of the factor made in good faith.

7. Wool was consigned in September to factors who made an advance at the time of the consignment, without any instruction or direction at the time of the consignment as to selling, and in the following February the principal wrote the factors to the effect that he would like to have the wool closed out and to get his returns by April first if that could be done without too much of a sacrifice, and early in March following also wrote referring to the February letter and stating that he saw no reason why the future market would be any better than it was then and that he was willing to sell on present market quotations received from the factors. *Held,* that, treating the two letters as a positive instruction to sell, the factors were not authorized to sell below the market quotations, and were not required to sell at a price insufficient to reimburse and recompense them for their advances and just charges, in the absence of any tender or a satisfactory offer to pay the same.

8. In an action by factors to whom wool was consigned to recover advances, the defendant alleged in his answer that the plaintiffs were negligent in failing to sell at the market price of the wool in the market at Philadelphia, to which place the wool had been consigned, and that if plaintiffs had complied with the terms of the contract and had sold the wool at the best or average market price obtainable on the Philadelphia market, the defendant would have received much more than the amount of the advances and charges of the factors, and prayed judgment for damages. *Held,* that the issues tendered by the answer were that the wool could have been sold at the quoted or average market price at Philadelphia by the exercise of ordinary care, skill and diligence, and that the failure to exercise such ordinary care, skill and diligence to sell the wool upon that market resulted in damage to the defendant; that the consignment was general and to a specified market, and the plaintiffs were not bound to look for any other market than the one to which the wool was consigned; and that the evidence as to sales and prices in other markets was not material and was improperly admitted, since, although such evidence, under some circumstances, might be admissible as tending to show the market price at the place where the wool was

to be sold, and the want of care or diligence of the factor in selling the wool at the best available price, no circumstances of that nature were disclosed as would take it out of the general rule.

9. In an action by factors for advances, where defendant counter-claimed, setting up a loss alleged to have occurred through the negligent failure of the factors to sell at the market price, an instruction that the factors were under obligations to carry out any and all positive instructions of the defendant with reference to the property consigned was erroneous because disregarding the lien of the plaintiffs' for advances and their right to reimbursement out of the proceeds of the sale.

10. An instruction in such action that if the jury should find that any latitude was given to the factors then they should consider whether the factors had acted in good faith and according to their best judgment in carrying out the instructions of the principal so as best to preserve his rights, was erroneous because of the absence of any evidence challenging the good faith of the plaintiffs.

11. The defendant had the right to open and close the argument to the jury where, in an action for advances by factors, the defense was a counter-claim by way of confession and avoidance alleging a loss occasioned by the negligent failure of the factors to sell at the market price, and the court properly instructed the jury that there was no dispute in the evidence as to the right of the plaintiffs to recover, unless the defendant had established his counter-claim by a preponderance of the evidence, and that the burden of proof rested upon the defendant.

ON PETITION FOR REHEARING.

12. In an action by factors for advances, where the defendant has counter-claimed alleging a loss occurring through the negligent failure of the factors to sell, if there is evidence which may properly be understood as showing a long delay by the factors in selling during a falling market, it may to that extent tend to show lack of diligence sufficient to justify the submission of the matter to the jury, and if unexplained may be sufficient to justify a finding of negligence; but, in applying that principle in the case stated, the rule concerning the duty of a factor who has made advances should be considered, and the jury properly instructed with reference thereto.

[Decided April 7, 1913.]                    (131 Pac. 38.)
[Rehearing denied August 2, 1913.]          (133 Pac. 1070.)

ERROR to the District Court, Sheridan County, HON. CARROLL H. PARMELEE, Judge.

The action was brought by Theodore Justice, Henry Justice, William Warner Justice, James Bateman and Henry K. Kenderdine, co-partners doing business under the firm name and style of Justice, Bateman and Company, against A. L. Brock. From a judgment in favor of the defendant the plaintiffs brought error. The material facts are stated in the opinion.

*Enterline & La Fleiche,* for plaintiffs in error.

The wool having been consigned without instructions or directions to the plaintiffs, who made large advances thereon, the defendant was not in a position authorizing him to control absolutely the sale by the factor or direct the time of sale and price, nor did his letters introduced in evidence amount to a positive direction that the wool be sold without further delay. (Heffner v. Gwynne-Treadwell Cotton Co., 87 C. C. A. 606; Drumm-Flato Com. Co. v. Union Meat Co., (Tex. Civ. App.) 77 S. W. 634; Poels v. Wilson, (Neb.) 108 N. W. 153; Poels v. Brown, (Neb.) 111 N. W. 798; Gordon v. Cobb, 60 S. E. 821; Brown v. McGram, 14 Pet. 479; 12 Ency. Law, (2nd Ed.) 646; Sturtevant Co. v. Dugan, 14 Ann. Cas. 675; Field v. Farrington, 10 Wall. 141; Wynne et al. v. Schnabaum, (Ark.) 94 S. W. 50.) To authorize a recovery by the defendant it was necessary that he should allege and prove that the failure to sell the wool at the best market price obtainable was due either to the fraud of the plaintiffs, or their failure to exercise ordinary care, skill and diligence, and that as a consequence he suffered the damage complained of. And the burden of proof was upon the defendant to establish those facts, if alleged. But the answer is defective in failing to properly allege these material matters.

A factor, as shown by the cases cited, and others, is only bound to exercise ordinary and reasonable care, skill and diligence in selling the consigned commodity at or within

. the market to which it is shipped for sale. Proof of sales made by the same or other parties, even though it be within the same market, does not of itself establish negligence on the part of the ·factor. It was error to permit the introduction of evidence as to the sale of wool by other parties in Philadelphia and elsewhere. (Pugh v. Porter Bros. Co., 50 Pac. 772; Lockett v. Baxter, 19 Pac. 23; Patterson v. Whaley, (Ga.) 66 S. E. 804.) The furnishing of market quotations by the plaintiffs to the defendant did not affect the matter in issue, for such quotations did not represent the price that wool could be sold for on the market each week. Market quotations may be based on sales actually made, few or many, and they are also given in the absence of any sales and based merely upon prices asked. The quotations furnished therefor were in no respect evidence of negligence on the part of the plaintiffs.

The defendant was given the privilege of opening and closing the argument. That was prejudicial to the rights of the plaintiffs. (Comp. Stat. 1910, Secs. 4391, 4499.)

*Metz & Sackett,* for defendant in error.

The evidence clearly sustains the verdict by showing that the failure of the plaintiffs to sell defendant's wool was caused solely by their negligence. The lowest price during all the time in controversy for the grade .of wool consigned was much greater than that for which it was subsequently sold, and enough to pay all advances and charges and the amount now demanded by the defendant as damages. The contract of consignment included a guaranty of sale. Such a guaranty we believe to mean a sale within reasonable time at the then market price. The February letter of the defendant requesting that his wool be sold, but not at too much of a sacrifice, is to be regarded as a direction to sell, even though at some sacrifice. An agent cannot put himself in an antagonistic relation to his principal and may not deal for his own benefit respecting the business of the agency. (Mechem on Agency, Secs. 454-457.) It was a question for the jury whether or not the plaintiffs refused to follow the

defendant's instruction, and made the sales that were made because of the advances, or because of negligence. (Butterfield v. Stevens, (Ia.) 13 N. W. 751.) The plaintiffs are not in a position to now take advantage of any error in the instructions complained of for the reason that the case was not tried upon the theory now advanced, and no instructions were requested upon any such theory. (Bunce v. McMahon, 6 Wyo. 24; Cosgriff v. Miller, 10 Wyo. 190; McKnight v. R. R. Co., 44 Minn. 141; Mullen v. Wilson, 44 Pa. St. 413; Simms v. R. R. Co., 3 S. E. 301; Schuman v. Johnson, 66 Tex. 70; Sutherland v. Shelton, 59 Tenn. 374; Knoxville v. Bell, 80 Tenn. 157; Cook v. Wootters, 42 Tex. 294; Ins. Co. v. Ice Co., 64 Tex. 578; Ins. Co. v. Tile Co., 43 N. E. 41; Hindman v. Timme, 35 N. E. 1046; Mackie v. Cent. R. R. Co., 6 N. W. 723; McQuillan v. Seattle, 13 Wash. 600, 43 Pac. 893; Barton v. Grey, 24 N. W. 638; Schroeder v. Webster, 88 Ia. 627, 55 N. W. 569.) Where a party wishes more specific instructions, the instructions given being correct so far as they go, he must request the giving of them. (Northern Pac. R. Co. v. Mares, 123 U. S. 710; Burlington R. Co. v. Schluntz, 14 Neb. 425, 16 N. W. 439; Eppert v. Hall, 133 Ind. 417, 31 N. E. 74; Wimer v. Allbaugh, 78 Ia. 79, 42 N. W. 587; Haymaker v. Adams, 61 Mo. App. 581; Kelly v. Houghton, 59 Wis. 400, 18 N. W. 326; Sudlow v. Warshing, 15 N. E. 532; Burkholder v. Stahl, 58 Pa. 371; Wiggins v. Guthrie, 101 N. C. 661, 7 S. E. 761.)

The admission of evidence as to sale and price at other places than Philadelphia was not prejudicial or erroneous, for the reason that it appeared by the testimony of the plaintiffs that wool prices within this country are based upon the Philadelphia market.

The rule of Brown v. McGram, 14 Pet. 479, and other decisions following that case, does not apply to this case. That was a case where the consignor attempted to delay sales by the factor, the latter claiming that it was necessary for him to sell to protect the advances made. The question

is a different one, however, where the instructions are to
sell, and where, if sales are made according to the instruc-
tions, the advances made will be fully protected.  The factor
has no right to disobey the instructions of his principal ex-
cept where it becomes necessary to protect his interest in
the consigned property.  If the property will bring the
advances made by the factor, then the general rule is the
same as though no advances had been made.  (Butterfield
v. Stevens, 13 N. W. 751; Weed v. Adams, 37 Conn. 378;
Phillips v. Scott, 43 Mo. App. 86, 97 Am. Dec. 369; Rice
v. Brock, 20 Fed. 611; Spruell v. Davenport, (N. C.) 20
S. E. 1022; Johnson v. Wade, 61 Tenn. 480; Howland v.
Davis, 40 Mich. 545.)  Where there is no attempt, either in
the pleadings or during the trial, to show that the failure
to obey the instructions of the principal was necessary to
protect the advances, the question cannot thereafter be
raised.  (Benedict v. Inland Grain Co., 80 Mo. App. 449;
Phillips v. Scott, *supra*; Weed v. Adams, *supra;* Rice v.
Brock, *supra*; Butterfield v. Stevens, *supra*.)  The evi-
dence was sufficient to sustain the verdict.  (Benedict v.
Grain Co., *supra*; Field v. Farrington, 10 Wall. 141; Atchi-
son v. Burton, 67 Ky. (4 Bush) 299; Linsly v. Carpenter,
27 N. Y. Super. Ct. 200; Usborne v. Stephenson, 48 L. R.
A. 432; Burnett et al. v. Hockaday, 61 Mo. App. 628;
Howland v. Davis, *supra*.)  It is the duty of the factor as
a general rule to sell at the market price.  (12 Ency. Law,
(2nd Ed.) 658, 659; Davis v. Cotton Mills, 178 Fed. 784;
Bigelow v. Walker, 24 Vt. 149, 58 Am. Dec. 156.)  It is
contended by counsel for plaintiffs that the weekly market
quotations furnished by the defendant to the plaintiffs were
not competent evidence of their contents, or as to market
prices.  That is not the law.  (Sisson v. R. R. Co., 14 Mich.
489; Kibler v. Caplis, 140 Mich. 28, 103 N. W. 531, 112
Am. St. 388; C. B. & Q. R. Co. v. Todd, 74 Neb. 712,
105 N. W. 83; Tex. Cent. Ry. Co. v. Fisher, 18 Tex. Civ.
App. 78, 43 S. W. 584; Aulls v. Young, 98 Mich. 231, 57 N.
W. 119; Bank v. City, 56 N. E. 288.)  A part of said re-

ports were introduced by the plaintiffs and the remainder by the defendant, and all are in the record without objection. The following are additional authorities supporting the proposition that the plaintiffs cannot now change the theory upon which they transacted the business, prepared the pleadings and conducted the trial: 2 Cyc. 670, 671; 3 Cyc. 243; Aaron v. Holmes, (Utah) 99 Pac. 450; Silver Peak Mines v. Judicial Dist., (Nev.) 110 Pac. 103; Bank v. Ketchum, (Neb.) 96 N. W. 614; Parker v. Ins. Co., (Neb.) 97 N. W. 280; Rutter v. Carothers, (Mo.) 122 S. W. 1056; Zeller & Co. v. Vinardi, (Ind.) 85 N. E. 378; Lesser Cotton Co. v. R. R. Co., 114 Fed. 133.

On petition for rehearing it was contended that the delay in sales was some evidence of negligence which might well have been submitted to the jury, and that since the case must be tried again the attention of the court was called to certain language of the opinion to the effect that there was no evidence of negligence which would seem to foreclose the defendant from .presenting his case according to the view well sustained by the authorities that a long delay upon a falling market tends to show lack of diligence and care on the part of the factor, and is sufficient when unexplained to sustain a verdict in favor of the consignor.

SCOTT, CHIEF JUSTICE.

The plaintiffs in error as co-partners brought this action in the court below as plaintiffs to recover from the defendant in error as defendant upon an alleged balance on an account for advances made by them as factor upon a consignment of wool, interest on such advances, and commission on the sale. The case was tried to a jury and a verdict returned in favor of the defendant for the sum of $2,000 upon his counter-claim for damages for an alleged failure to sell the wool at the market price and as directed by the defendant. A motion for a new trial was overruled, judgment was rendered upon the verdict, and the plaintiffs bring error.

1. It is assigned as error that the verdict is unsupported by the evidence and that the trial court erred for that reason in denying a motion for a new trial. The plaintiffs were commission merchants residing and doing business as such in the City of Philadelphia in the State of Pennsylvania. On September 21, 1907, the defendant consigned to them as factor 45,852 pounds of his own wool and 10,345 pounds known as the J. O. Morgareidge wool, in all 56,197 pounds. Concurrent with the consignment and shipment he drew on plaintiffs as his factor, a sight draft for advancement on the wool so consigned for the sum of $7,535.77, which, by agreement bore interest at the rate of 6 per cent per annum until paid. The following letter was received by the defendant from plaintiffs through due course of mail:

"Justice, Bateman & Co.
WOOL
122 South Front Street, Philadelphia.
Sept. 25th, 1907.

*Mr. A. L. Brock, Buffalo, Wyoming:*

Dear Sir:—We will receive and sell your wool for the commission of one and one-quarter cents per pound. Interest on advances at the rate of six per cent per annum; no other charges after arrival of wool in store.

Our Commission includes Fire Insurance, premium, Storage and Labor for any period not exceeding six months after arrival of wool, and also Guarantee of Sales.

While we do not guarantee insurance Companies, we make ourselves responsible to keep your wool insured in first class Foreign and Domestic Companies.

Yours truly,
(Signed)   Justice, Bateman & Co."

On the same day the following letter was written by plaintiffs and sent to defendant by due course of mail:

"Philadelphia, September 25, 1907.

*Mr. A. L. Brock, Buffalo, Wyoming:*

Dear Sir:—We have received through Mr. Charles T. Lee invoice of your 155 bags of wool, which shall have our

best attention on arrival. We note that you wish the 30 bags of the J. O. Morgareidge clip accounted for separately.

The wool market is quiet at present, but we look for a better demand shortly, when we think manufacturers will find it easier to get money to finance wool purchases.

Very truly yours,

(Signed)   JUSTICE, BATEMAN & Co.

Charles S. Haight."

Thereafter plaintiffs as factor sent to defendant by due course of mail the following letter:

"Philadelphia, October 4, 1907.

*Mr. A. L. Brock, Buffalo, Johnson Co., Wyoming:*

DEAR SIR:—We today paid your draft for $7,535.77.

Very truly yours,

(Signed)   JUSTICE, BATEMAN & Co.

Childs."

The plaintiffs as factor received the wool, stored, exhibited it for sale and sent weekly market quotations on that market to the defendant. The market quotations furnished on January 28 and February 4, 1908, were the same. On February 8, following, the defendant wrote plaintiffs to close out his wool so he could get his returns by April 1st following, if it could be done without making too much sacrifice. On March 5, 1908, he again wrote plaintiffs as follows: "I wrote you sometime ago in regard to my wool. *I wrote you to sell my wool as I will want the money April 1,* and I really fail to see any reason why the future market will be any better than it is now. One of my neighbor sheep men recently made a good sale of 25 cents. I am willing to sell on present market quotations I received from you. * * *" The wool was classified by the plaintiffs and of the amount so consigned, 47,996 pounds, was classified, graded and sold as fine and fine medium, and the price for that grade of wool, according to the market quotations furnished from time to time between the consignment on Sept. 21, the day of shipping, until April 1, 1908, following, was not less than 19 cents per pound. The balance of the

wool was also graded and sold according to its grade. In the account rendered only 970 pounds out of the total of 56,197 pounds consigned, was sold prior to April 4, 1908, and the balance was sold from time to time after that date until November 18, 1908, when the wool was finally closed out. The total gross amount for which plaintiffs sold the wool was $9,113.18, receiving for defendant's share the amount of $7,426.40. It is alleged that had plaintiffs sold defendant's wool independent of the Morgareidge lot as directed by defendant it would have brought $9,535.00 net, and defendant testified that plaintiffs would have received $9,170.40 therefor, which sum would have been sufficient to have paid the draft, interest thereon, commission and all charges for shipping and handling the wool, leaving a balance of $2,000 due defendant.

The plaintiffs alleged that after receiving and making the advances on the consignment they were unable to sell the wool at the market quotations or otherwise than at the times and prices received for it, and that their lien for advances could not have been realized had they sold at a greatly reduced price, which would have been necessary. Their evidence tends to support these allegations with the exception that the market was a little firmer in the early part of October, 1907, when the wool was received, up to the time of a financial panic which occurred soon after and during that month, and thence on through the year following the wool market was dull. The defendant gave no positive instructions to sell prior to his letter of February 8, 1908, supplemented by his letter of March 5, 1908, but up to that time had left price and time of sale to the judgment of the plaintiffs. It is the general rule that a factor is not obliged to sell at a price which would be less than his lien for advances, commission and just charges at the request of his principal unless the latter pays or tenders such advances and charges. (Heffner v. Gwynne-Treadwell Cotton Co., 160 Fed. 635, 87 C. C. A. 606.) The evidence, however, tends to show that had the factor here sold as instructed at the market

quotations furnished their principal there would have been $2,000 realized from the sale over and above what was necessary to have paid such factor all advances, interest, commissions and charges. The plaintiffs were bound to exercise ordinary care, skill and diligence to obtain the market value of the wool, but could not withhold the wool from the market against the directions of the defendant if such ordinary care, skill and diligence would have resulted in a sale at a price that would have secured them in their charges, and been satisfactory to the defendant. There was nothing but a simple consignment of the wool to be sold on commission, without any instruction, direction or advice whatsoever communicated by the defendant to plaintiffs at the time. The defendant had the right to say when the wool should be sold and at what price so long as it did not impair the factor's right to reimbursement out of the proceeds for all his advances and charges. (19 Cyc. 126, 127, 128; Heffner v. Gwynne-Treadwell Cotton Co., *supra*.) Under such circumstances the lien would be paid and the factor could not dictate to his principal when the wool should be sold, or impose on him the hazard of a falling market. When we say market, we mean such a market as was available to the plaintiffs. We can not go further than that within the issues in this case for there is no allegation in defendant's answer or counter claim that plaintiff's failure to sell the wool at the market quotations was the result of fraud. We think the issue of failure to exercise ordinary care, skill and diligence and that as a consequence the defendant suffered the damage complained of was the only one fairly made by the pleadings. Drum-Flato Commission Co. v. Union Meat Co., 33 Tex. Civ. App. 587, 77 S. W. 634, was a case somewhat similar on the facts to the one here. There the principal shipped cattle to its factor who, it was claimed, wrongfully sold them on a low classification. The court said that at the market to which the cattle were shipped it was the invariable custom "for the factors to whom they were consigned to exhibit them in the market for sale, and sell them

at the highest price that can be obtained. The great pre-
ponderance of the evidence shows that this method of sale
was adopted by the defendant, the cattle exhibited to the
buyers, due care and diligence taken and good faith exer-
cised, by the defendant, to sell them at the highest market
price obtainable, and after the exercise of such care and
diligence they were sold at the best price that could be ob-
tained." In the case before us the evidence shows that the
method of selling the wool was to exhibit it to proposed
buyers, and that this was done. There is no evidence of
want of diligence in this respect. There may have been wool
of the same or higher quality sold at the market quotations
but that fact of itself would not be sufficient to entitle the
defendant to recover if the factor was diligent and in good
faith endeavoring to sell defendant's wool. In Commission
Co. v. Union Meat Co., *supra,* the following instruction to
the jury was upheld, viz.: "If defendant's agent exercised
ordinary care, skill, and diligence to obtain the fair market
value of the cattle" defendant was entitled to a verdict,
"although the jury may have believed from the evidence that
the cattle were sold for less than their market value." As
is said by Judge Cooley: Whoever bargains to render
services for another undertakes for good faith and integrity,
but he does not agree that he will commit no error. For
negligence, bad faith, or dishonesty he would be liable to
his employer, but if he is guilty of neither of these, the
master or employer must submit to such incidental losses as
may come in the course of the employment, because there
are incidents to all avocations, and no one by any implica-
tion of the law ever undertakes to protect another against
them." It was further said in that case that "Because the
verdict on the question of negligence finds no support in the
evidence the judgment is reversed and the cause remanded."
The plaintiffs here were bound under their contract to ex-
ercise ordinary care, skill and diligence to obtain the fair
market value of the wool. We look in vain to find any evi-
dence in this record showing, or tending to show, negligence

in that respect on the part of the plaintiffs. They were not insurers of sale or price. The record is silent as to whether they could have sold the wool prior to the panic in October, 1907, and, at the market quotations. Assuming that they could have done so, yet they were not instructed to sell at that time, and being agents for selling the wool without such instructions from their principal the latter will be presumed to have approved the action of the former in not selling at that time. In such case he took the risk of any loss by reason of the market becoming demoralized, and could not be heard to complain of the failure to sell at that time and the resulting loss after it had occurred. At the most upon the evidence the failure to sell at that time would only be a mistake in judgment made in good faith which would not render plaintiffs liable provided always they were diligent and faithful in trying to effect a sale. (Lesesne v. Cook, 16 La. 58; Savage v. Birkhead, 20 Pick. (Mass.) 167; 19 Cyc. 119.) It is true that the market quotations purported to show the price of wool on the Philadelphia market from time to time, but the plaintiffs' evidence is undisputed to the effect that such quotations after the said panic in October, 1907, until after the Presidential election in November, 1908, were merely nominal and the prices at which sellers were offering their wool, but that there were few buyers and scarce sales at such prices, and further that the manufacturers or customers owing to difficulty in getting money to finance purchases were buying such small quantities of wool as would enable them to fill their contracts and, owing to the unsettled financial condition, were not stocking up for future orders. On November 18, 1908, plaintiffs wrote defendant that there had been a better demand for wool and that they had closed out his wool at the prices appearing in the account rendered, a part of the fine and fine medium grade at 16 cents, and a part at 16½ cents per pound, and the other grades at the prices therein stated. The market quotations theretofore furnished had written across their face, "Market quiet. Medium wool slow of

sale," and similar notations. Defendant's letter of February 8, 1908, hereinbefore referred to, indicates that he understood the difficulty of selling wool at the market quotations. He says in that letter: "I would like to have you close my wool out so I can get my returns by April first *if you can do so without too much of a sacrifice,* as I will be needing some money at that time. While I have always left the time for selling with you heretofore I would rather sell now on the market as it is than to borrow money to meet my demands on April first." The letter of March 5th, following, from defendant to the plaintiff and heretofore quoted, may be deemed to have changed the condition contained in the former with reference to selling the wool, and the two letters considered together constituted the first positive direction to sell. The plaintiffs treated these letters as a direction to sell the wool on the market quotations as of those dates. Their efforts and diligence in that respect were unavailing. In order to sell at all concessions from the quoted price had to be made and the direction to sell was at the quoted price. Plaintiffs' undisputed evidence tends to show that they were endeavoring all the time to sell by exposing the wool to their customers, and were for the reasons stated only able to sell small quantities from time to time. Upon the pleadings their good faith is not questioned, and the question of the amount of sacrifice to be made in selling the wool as contained in defendant's letter of February 8, 1908, until the receipt of the letter of March 5, 1908, lodged in the plaintiff a discretionary power as to when and for what price to sell. Treating the two letters as a positive instruction to sell, plaintiffs were not authorized to sell below the market quotations, nor as already said, were they required to sell at a price insufficient to reimburse and recompense them for their advances and just charges, in the absence of any tender or a satisfactory offer to pay the same by defendant. The undisputed evidence, notwithstanding the market quotations furnished, shows that they used due diligence and were unable to find a purchaser who would pay the market quo-

tations for the wool or sufficient to reimburse them for their advances and charges.

2. The defendant was permitted, over objection and which is here assigned as error, to introduce evidence as to the price of wool at markets other than that to which he shipped his wool. It was within the purview of the contract that the wool should be sold upon the Philadelphia market. It was shipped to that market and it was the failure to sell upon that market of which defendant complained. He alleges in his amended answer "that the market price obtainable for said wool upon the said market at Philadelphia during the spring and summer of 1908 averaged about 20 cents per pound. That the said plaintiffs wholly neglected and failed and refused to sell the said wool at said market price above mentioned, but disposed of said wool, a part thereof, at 10 cents per pound, and other portions thereof at 16 cents per pound. Defendant alleges that if the said plaintiffs had complied with the terms of said contract and sold said wool at the best market price, or at the average price obtainable on said market in Philadelphia, that this defendant would have received $9,535.00 net." The issue was thus squarely tendered, (1) that the wool could have been sold by the plaintiffs at the quoted or average market price at Philadelphia by the exercise of ordinary care, skill and diligence, and (2) that their failure to use such ordinary care, skill and diligence to so sell the wool upon that market resulted in damage to the defendant. If upon those issues and the evidence the plaintiffs did exercise ordinary care, skill and diligence to obtain the quoted or average market price for wool at that market, then under the rule announced in Commission Co. v. Union Meat Co., *supra,* they would be entitled to a verdict even though the jury may have believed from the evidence that the wool was sold for less than the quoted or average market price. The consignment was general and to a specified market and the plaintiffs were not bound to look for any other market than the one to which the wool was consigned (Kingston v. Wilson, 14 Fed. Cas.

No. 7,823, 4 Wash. C. C. 310.)  The defendant selected the market upon which the wool was to be sold (Davis v. Kobe, 36 Minn. 214, 30 N. W. 662, 1 Am. St. Rep. 663) and he assumed the risk of plaintiffs being unable by the exercise of ordinary care, skill and diligence to sell it upon that market.  It was held in Phillips v. Scott, 43 Mo. 86, 97 Am. Dec. 369, that under a general consignment such as here the factor had no authority to ship the goods to another market, and it was held in Phy v. Clark, 35 Ill. 377, that if he does so he is liable for loss incurred from selling at a less price than he could have obtained in the market where he had authority to sell.  Applying these rules to the case here it follows that plaintiffs were not bound within the terms of the contract to sell the wool other than on the Philadelphia market.  In that view evidence of the price of wool in other markets was not material or germane to the issue and the court erred in admitting it over objection, for the plaintiffs were under no obligation to sell on those markets.  That evidence under some circumstances might perhaps be admissible as tending to show the market price at the place where the wool was to be sold, and the want of care or diligence of the factor in selling the wool at the best available price, but no such circumstances are disclosed in this case as would take it out of the general rule.

3.  The court, over plaintiff's objection, instructed the jury without qualifications that the plaintiffs "were under obligations to carry out any and all positive instructions of his (the defendant) with reference to the property consigned to them.  If you find that any latitude was given to the said agents in regard to their handling of the property entrusted to them, then, I charge you, you should consider whether they acted in good faith and according to their best judgment in carrying out such instructions so as best to preserve the rights and interests of their principal."  This instruction was erroneous for two reasons; first, it disregarded plaintiff's lien for advances made on the consignment and their right to be reimbursed out of the proceeds

of the sale; and, second, the absence of any evidence in the record upon which the good faith of plaintiffs could be challenged. Both of these questions have hereinbefore been discussed on the sufficiency of the evidence and need not be further referred to.

4. It is urged that the court erred in permitting the defendant over objection to open and close the argument to the jury. The defense was a counter claim by way of confession and avoidance and the court correctly instructed the jury that there was no dispute in the evidence as to the plaintiff's right to recover unless the defendant had established his counter claim by a preponderance of the evidence, and that the burden in this case rested upon the defendant. That being the situation, the defendant had the right to open and close the argument to the jury.

Other alleged errors have been presented, but as the judgment must be reversed for the errors hereinbefore discussed we assume that they are not likely to occur upon a new trial. The judgment will be reversed and the cause remanded for a new trial.                                        *Reversed.*

POTTER, J., and BEARD, J., concur.

### ON PETITION FOR REHEARING.

PER CURIAM.

The defendant in error has filed a petition for rehearing, but takes exception only to certain language in the former opinion used in discussing the sufficiency of the evidence, and does not question the correctness of the conclusions reached upon the other points discussed in the opinion. Exception is taken particularly to the following language of the opinion: "The plaintiffs here were bound under their contract to exercise ordinary care, skill and diligence to obtain the fair market value of the wool. We look in vain to find any evidence in this record showing, or tending to show negligence in that respect on the part of the plaintiffs. * * * The undisputed evidence, notwithstanding the market quotations furnished, shows that they used due diligence and were unable to find a purchaser who would pay

the market quotations for the wool, or sufficient to reimburse
them for their advances and charges." In the brief sup-
porting the petition for rehearing it is conceded that the
judgment must be reversed upon other grounds stated in the
opinion and not now contested, but it is contended that there
was evidence in the case tending to show that the plaintiffs
below held the consigned wool for several months during a
falling market, and that such evidence was not only compe-
tent, but was proper to go to the jury, and sufficient *prima
facie* to show negligence or lack of diligence on the part of
the plaintiffs. And it is said that the language above quoted
from the former opinion ignores such evidence, and unless
modified will have the effect upon a new trial of preventing
the submission of such evidence to the jury.

In stating that "We look in vain to find any evidence in
this record showing, or tending to show negligence in that
respect on the part of plaintiffs," and that "The undis-
puted evidence    *   *   *   shows that they used due dili-
gence," &c., reference was had to the whole of the evidence,
and it was not intended as an assertion that there was no evi-
dence tending to show lack of diligence. If there was evi-
dence in the case which might properly be understood as
showing that there had been a long delay during a falling
market, or if upon another trial evidence to that effect is
introduced, then to that extent the evidence tended, or may
tend, to show lack of diligence, and sufficient to justify the
submission of the matter to the jury, and if unexplained
might be sufficient to justify a finding of negligence. (Field
v. Farrington, 10 Wall. 141, 19 L. Ed. 923.) It was not the
intention by the use of the language above quoted to fore-
close or embarrass the defendant below, plaintiff in error
here, in the proof of his defense upon another trial. It must
be remembered that advances had been made by the factors
in this case, and in view of such fact, and the failure, as
it seemed to the court, to show that the wool could have
been sold at an earlier date for a sufficient amount to reim-
burse the factors for their advances, and all the evidence

bearing upon the question, the court was of the opinion, intended to be expressed by the language now criticized, that upon the whole evidence negligence had not been shown. The above explanation of the language used in expressing that opinion will, we think, obviate any danger of its misconstruction upon another trial. We repeat that it was not intended to deny the admissibility of evidence showing long delay in selling the wool during a falling market, nor its sufficiency, in the absence of satisfactory explanation, to show negligence, but in applying that principle where advances have been made, the rule concerning the duty of a factor under such circumstances should be considered, and the jury properly instructed with reference thereto. Having thus explained the language excepted to, a rehearing is deemed unnecessary and will be denied.