Argued 26 October; decided 20 November, 1899.

**USBORNE v. STEPHENSON.**

[48 L. R. A. 432, 58 Pac. 1103.]

1. TRIAL—WITHDRAWING JUROR.*—The practice of withdrawing a juror for the purpose of postponing or continuing the trial of a civil case does not prevail in Oregon.
2. IDEM.—The only cause for withdrawal of a juror in a civil case, if that practice can be resorted to for any reason, is surprise on the trial, and a motion therefor cannot be based upon matters happening prior to the opening of the trial and which were considered on motion for a continuance before the jury was impaneled.
3. EVIDENCE OF NEGLIGENCE OF FACTOR.—The question of care and diligence in respect to the disposal of goods received on consignment, which had been retained for almost a year, when they were consumed by fire, may be submitted to the jury, where there is evidence of their value in the market.

From Multnomah : E. D. SHATTUCK, Judge.

Action by Thomas Usborne against George R. Stephenson and another. The plaintiff is a hop factor in the City of London, and the defendants are hop growers in this state. In September, 1893, the defendants consigned to plaintiff, for sale on commission, ninety-eight bales of hops, of the aggregate weight of seventeen thousand three hundred and ninety-two pounds, upon which he made an advance of $1,550. The hops were received in London

---

*NOTE.—This case is reported in 48 L. R. A. 432, with an extended historical consideration of the power to withdraw a juror and the effect of so doing in both civil and criminal cases.—REPORTER.

about the twenty-fourth day of November, 1893, by plain-
tiff, who retained them in his possession until September
13, 1894, when, as he alleges, they were destroyed by fire,
whereby he became entitled to and collected insurance to
the amount of $1,714.32, which, after being placed to de-
fendant's credit, left a balance for freight, insurance,
money advanced, expenses, and interest, of $834.40, to
recover which this action was brought.   The defendants,
by their answer, denied any knowledge or information
sufficient to form a belief as to whether the hops were de-
stroyed by fire, or that plaintiff collected any insurance
money thereon, and denied owing the balance alleged to
be due, and, for a further and separate defense, averred,
in substance, that, owing to plaintiff's negligence in not
selling the hops before the alleged fire, they were dam-
aged in the sum of $4,099.54, for which they prayed judg-
ment, and that such sum be set off and counter-claimed
against any sum found due the plaintiff.   The cause was
brought to an issue by the filing of a reply on the twenty-
fifth of February, 1896, and on the twenty-fifth of May
an order was made setting the trial for the twenty-fourth
of June.   On the day set for the trial, but before the jury
was called, the plaintiff moved for a continuance on ac-
count of the absence of material testimony ; basing his
motion upon an affidavit of his counsel to the effect that
he could not safely proceed to trial without the deposi-
tions of several residents of London.   The motion being
denied, a jury was impaneled and sworn ; but, before any
evidence had been given, the plaintiff filed a motion for
permission to withdraw a juror, based upon an affidavit
of his counsel substantially the same as the one filed in
support of the motion for a continuance, except that it
contained a statement to the effect that the cause had been
set down for hearing in violation of a verbal understand-
ing and agreement with counsel for defendants, which,

however, was denied by a counter affidavit. This motion was likewise denied, and the cause proceeded to trial, resulting in a judgment in favor of defendants for the sum of $537.04, from which the plaintiff appeals, assigning as error the overruling of his motion to withdraw a juror, and certain instructions given to the jury.

AFFIRMED.

For appellant there was a brief over the names of *William Wallace Thayer*, *Henry St. Rayner*, and *Edgar Grimm*, with an oral argument by *Mr. St. Rayner*.

For respondent there was a brief over the names of *Geo. H. Durham* and *Platt & Platt*, with an oral argument by *Mr. Durham*.

MR. JUSTICE BEAN, after stating the facts, delivered the opinion of the court.

1. This is the first attempt, so far as we are advised, to invoke in this state the practice of withdrawing a juror. There is but little satisfactory information to be obtained from the books in regard to the ancient practice, which used to be resorted to when a party was taken by surprise on a trial, of withdrawing a juror, and thus causing a mistrial, and, of necessity, a postponement of the case. It was originally confined to criminal cases, and seems to have been adopted for the purpose of avoiding a rule which once obtained, based largely upon a dictum of Lord Coke, that a jury sworn and charged in any criminal case could not be discharged without giving a verdict. To escape the effect of this rule, and yet apparently observe it to the letter, the courts resorted to the fiction of directing the clerk to call a juror out of the box, when it appeared that the prosecution was taken by surprise on the trial, whereupon the prosecution objected, or was sup-

posed to object, to proceeding with the eleven jurors, and the trial went over for the term : 2 Hawk, P. C. 619 ; 2 Hale, P. C. 294 ; *Wedderburn's Case*, Fost. 22 ; *People* v. *Olcott*, 2 Johns. Cas. 301 (1 Am. Dec. 168) ; *United States* v. *Coolidge*, 2 Gall. 363 (Fed. Cas. No. 14,858). It was nothing more, however, than a means of obtaining a continuance or postponement of the trial after the jury had been impaneled and sworn. At first it was thought this could be done only by the court ordering the discharge of one of the jurors, and then holding that, as the case could not be tried before the remaining eleven, it must be continued. But after the doctrine of Lord Coke had been repudiated, and it became the settled rule that it was within the power of the court, in a proper case, to discharge the jury after it had been impaneled and sworn, and continue the cause, the device of withdrawing a juror seems to have become practically obsolete, and but little, if any, reference to it as a substantive practice is to be thereafter found in the books. That it ever prevailed at common law in civil cases is very doubtful. No case has come under our observation in which it was resorted to in England. Indeed, the only reference we have been able to find to the question in the early authorities is a note to *Chedwick* v. *Hughes*, Carth. 464, in which it is stated that Lord Chief Justice Holt, in a case of perjury tried before him, said that it was the opinion of all the judges of England, upon debate between them, that in civil cases a juror cannot be withdrawn but by consent of all parties. And while the authority of this note underwent a critical examination in the subsequent case of Sir John Wedderburn, Fost. 28, from which its authority is rendered rather questionable, it seems to be the only reference to the practice in civil cases. It was early ruled, however, in this country, by the courts of New York, after some hesitation, that a court may allow a juror to

be withdrawn in a civil case, when necessary to save the plaintiff from the consequence of a fatal mistake in his testimony: *People* v. *Judges of New York*, 8 Cow. 127. And we believe it is still regarded as a proper practice in that state, and is open to either party: Bishop, Code Pl. § 428; *Dillon* v. *Cockcroft*, 90 N. Y. 649; *Messenger* v. *Fourth Nat. Bank*, 48 How. Prac. 542. But, so far as we have been able to ascertain, it does not prevail elsewhere in this country; the same result being accomplished by a direct application to the court for a postponement of the trial: 4 Enc. Pl. & Prac. 863. We are therefore of the opinion that the motion was properly denied on the ground that no such practice prevails in this state.

2. But, however that may be, whatever authorities there are on the subject all agree that the practice can be resorted to only when a party finds himself taken by surprise on the trial, and when further proceeding therewith would be productive of great hardship or manifest injustice to him. Mr. Bishop, in the section of his work on Code Pleading already cited, in speaking of the New York practice, says: ''Instead of submitting to a nonsuit, the plaintiff, if he finds himself taken by surprise on the trial, —as by the absence of a witness who has been in attendance, or by the unexpected presentation of evidence by his adversary which he is not prepared to meet, or by any accident which might render the further progress of the trial disastrous and unfair to him,—may ask the court to withdraw a juror. The result of this application, if granted, will be to produce a mistrial; and the court may then continue the pending action, and set the trial over to a future day, when the plaintiff may come properly prepared to try the case afresh.'' Within this rule, the plaintiff's motion was likewise properly denied, because it is not based upon anything occurring at the trial, but upon matters happening long prior thereto, and which

could be, and were, properly submitted to the court in support of the motion for a continuance made before the jury was empaneled.

3. It is also claimed that the court erred in instructing the jury as to the law of negligence, and submitting to them the question as to whether the plaintiff had exercised due care and diligence in selling and disposing of the hops consigned to him by the defendants, on the ground that there was no evidence to support such an instruction. The evidence on the part of the defendants tended to show that, at the time the hops were received by the plaintiff in London, they were worth in that market from twenty-four to twenty-five cents a pound, notwithstanding which he retained them in his possession for almost a year, when they were consumed by fire ; and this was, in our opinion, sufficient, in the absence of any explanation whatever, to carry the case to the jury upon the question of negligence, and was sufficient upon which to base an instruction. This disposes of the questions made on the appeal, and, there being no error in the record, we have no alternative but to affirm the judgment.                    AFFIRMED.