(No. 12673.—Pleas of release of errors sustained.)
Mary Jane Scott *et al.* Defendants in Error, *vs.* Harold
Scott *et al.* Plaintiffs in Error.

*Opinion filed October 21, 1922.*

1. Partition—*when pleas of release of errors will be sustained.*
A party cannot receive and appropriate the benefits of a decree and
then seek to reverse it on the ground that it was erroneous, and
the acceptance of the proceeds of sale in a partition suit operates
as an estoppel and will be treated as a release of errors on the part
of the party accepting the same.

2. Minors—*infancy cannot be used to perpetrate injustice.* The
privilege of infancy is to be used by one for his protection and not
to enable him to perpetrate wrong and injustice upon others.

Writ of Error to the Circuit Court of Sangamon
county; the Hon. E. S. Smith, Judge, presiding.

J. W. Templeman, and T. W. Hoopes, for plaintiffs
in error.

Wilson & Butler, and Edward P. Brockhouse, for
defendants in error.

Mr. Justice Farmer delivered the opinion of the court:

The original bill in this case was filed by Mary Jane
Scott in the Sangamon county circuit court to the Septem-
ber term, 1918, for the partition of 80 acres of land. By
leave of court the bill was amended by including an addi-
tional 260 acres. The land was previously owned by Sam-
uel Javins, who died testate. By his will he devised the
land to F. H. Wemple, trustee, to sell and divide the pro-
ceeds among the legatees named. The heirs and legatees
elected to take the land in kind. The land was partitioned
by a decree of the circuit court of Sangamon county, and
the 340 acres described in the bill as amended were set off
to Mrs. Scott and her only child, Harry E. Scott. Harry

died intestate in February, 1912, leaving a widow, who has since died, and four minor children, viz., Harold, Francis, Florence and Stuart. His estate was administered and settled. During the lifetime of Harry he and his mother gave a mortgage on the land to William H. Mason to secure a note for $14,000, which was unpaid when Harry died. The bill alleges Mrs. Scott and her son, Harry, each owned an undivided one-half of the land and that on the son's death his four children inherited his undivided one-half, and that they and Mrs. Scott are the sole owners of the land, subject to the Mason mortgage. There was a decree for partition and for the sale of the land, and it was sold pursuant to the decree by the master in chancery. The money arising from the sale of the interest of Harry Scott's children was paid to their guardian, Mrs. Scott. Said four children by next friend sued out this writ of error.

The merits of the decree are not now before us. Since the writ was sued out, Harold, Francis and Florence Scott have become of age. Florence filed a disclaimer and refused to prosecute the writ of error, and an order of severance was made as to her. The other three remained as plaintiffs in error, and we are not advised as to whether Stuart is of age.

Marie C. Mason, as administratrix of her husband's estate, answered the bill, setting up the unpaid mortgage as a lien on the land. She filed pleas of release of errors as to Harold and Francis Scott. On motion, Mary Jane Scott was allowed to adopt the pleas of release of errors as her pleas also, and the evidence taken on the issues made under them, and the statement, brief and argument of Mrs. Mason. The pleas of release of errors averred that Harold and Francis Scott had received and accepted the money arising from the sale of their interests in the land sold by the master in chancery and were therefore estopped to prosecute the writ of error. The pleas averred the payment, acceptance and appropriation to their own use of various sums

of money paid them at different times by their guardian out of the proceeds of the sale of the land. Issues of fact were made on the pleas, and the cause was referred to a commissioner to take and report the evidence without his conclusions thereon. The evidence has been taken and reported, and the cause was submitted only upon the issues of fact made by the pleas of release of errors as to Harold and Francis Scott.

Francis' twenty-first birthday was March 16, 1919. On November 5, 1918, four months previous to his birthday, he filed a petition in the county court alleging Mary Jane Scott was appointed his guardian in May, 1912; that she had not filed a report of her receipts and expenditures as such guardian; that she had received large sums of money as guardian of petitioner from the sale of real estate by decree of the circuit court of Sangamon county and had not inventoried or accounted for it; that she is seventy-four years old and incapable of attending to the duties of guardian. The petition prayed that she be removed, a new guardian appointed, and that she be required to account and pay over all moneys in her hands to her successor. The court ordered her to file a report, which she did December 13, 1918. Among other receipts she charged herself with $4459.72 paid her by the master in chancery from the sale of the land in the partition suit. A hearing was had on the report in April, 1919, and the court found there was a balance in her hands due Francis of $1342, and directed her to pay that sum to Theron Kinnear, who was appointed her successor. This order was subsequently modified and the amount found due from her was fixed at $866.35. That order was entered in June, 1919, three months after Francis had attained his majority, and he was present when the order was made. He employed an attorney to attend to the matter for him and knew what was done. In the order of June 7, 1919, the county court found that Kinnear had incurred obligations for necessaries supplied Francis and his

family in the sum of $866.35, and it was ordered that Mrs. Scott pay him said sum, and that when Kinnear filed his report, with vouchers showing payment of said sum, he be discharged as such guardian. It was further ordered that when Mrs. Scott filed a receipt for such payment her report be approved and she be discharged. Mrs. Scott's report shows total receipts of $6111.01, of which $4459.72 was from the sale of the land in the partition suit, and total expenditures $5415.65. Most of the expenditures were made before Francis was twenty-one. Many of them were cash paid Francis, and many of them were expenditures for necessaries for him and were proper credits. March 15, 1919, the day he attained his majority, (14 R. C. L. 218; 22 Cyc. 512;) Mrs. Scott paid him by check signed by her as guardian, $60, March 26 she gave him a check for $150, and April 7 a check for $75. These checks were paid and bear the indorsement of Francis. She was still acting as guardian when these checks were given, though two of them did not bear the description, guardian. Francis testified he never received a dime of the $4459.72. The proof abundantly shows the contrary. He was present and was represented by counsel employed by him when the hearing was had in the county court on objections to his guardian's report. The proof abundantly justifies the conclusion that he was familiar with the report and understood the whole matter. The court found Mrs. Scott had paid out all the money of her ward except $866.35, which she was ordered to and did pay to Kinnear, her successor, and also ordered that on payment of that amount and filing receipt she be discharged. No objection appears to have been made by Francis and no attempt was made to have the order of the county court set aside or reviewed. It is true, most all the expenditures made for Francis were made before he was twenty-one years old, but the court held them to be proper credits and approved them. It appears from the report itself that except the cash paid him they were proper payments on the ward's

account.  Mrs. Scott paid him $285 in cash after he attained his majority, and the obligations paid by Kinnear were all paid after he was of age.  Francis received the benefits of the decree he seeks to reverse and is estopped to prosecute the writ of error.

Harold Scott denied knowing his grandmother was his guardian or had any money in her possession belonging to him.  He does not deny she paid out to and for him large amounts, but says those payments were gifts.  He employed an attorney and demanded his guardian make a report.  She employed counsel to make her report, and after it was prepared it was given to Harold to submit to his attorney.  It is not denied the payments were made as shown by the report, but the claim asserted is that they were not made out of the proceeds of the sale of land but were gifts.  He is so completely contradicted by the testimony of credible witnesses and from circumstances that we shall not take the time to set out the testimony.  As a sample of the claim made by him we may refer to the purchase by him of furniture for his family when he was married, before he was of age.  He selected the furniture and had its cost ($321) charged to Mrs. Scott and she paid it.  He still has and uses the furniture.  At another time Mrs. Scott purchased for and delivered to him $1000 Liberty bonds.  He testified he sold the bonds and invested $600 of the proceeds of the sale in furniture which he still has and uses.  He told his grandmother he wanted to buy land with the money and later told her he used it for that purpose, but now seeks to escape being charged with its receipt by saying it was a gift to him and that he spent it for other purposes, all except the amount paid for furniture.  He says now he does not claim the furniture but is in possession of it as bailee for the rightful owner.  Most all of the important testimony of Harold is unsupported by any other evidence, and is so conclusively contradicted by credible witnesses that in our opinion his testimony is entitled to very little consideration.

We are so thoroughly convinced that the evidence supports the pleas of defendants in error that Francis and Harold Scott received the benefits of the proceeds of the sale of their interests in the land that it is useless to extend the discussion of the evidence. The law is well settled that a party cannot receive and appropriate the benefits of a decree and then seek to reverse it on the ground it was erroneous. Acceptance of the benefits operates as an estoppel and will be treated as a release of errors. (*Trapp* v. *Off,* 194 Ill. 287; *Moore* v. *Williams,* 132 id. 591; *Thomas* v. *Negus,* 2 Gilm. 700; *Corwin* v. *Shoup,* 76 Ill. 246.) "In equity, where a man has been silent when in conscience he ought to have spoken, he shall be debarred from speaking when conscience requires him to be silent." (Bigelow on Estoppel, 501.) The privilege of infancy is to be used by one for his protection and not to enable him to perpetrate a wrong and injustice on others. 2 Kent's Com. sec. 240; 1 Parsons on Contracts, 269; *Hobbs* v. *Hinton Foundry Co.* Ann. Cas. 1917D, 410; *Baltimore and Ohio Railroad Co.* v. *Duke,* Ann. Cas. 1913C, 832.

The burden was on defendants in error to prove their pleas. They abundantly met the requirements of that rule of law. That being the only issue submitted for decision, we hold the pleas were sustained by the proof, and that Harold and Francis Scott have by their actions released the errors they alleged against the decree and are estopped to prosecute the writ of error. As to them the writ will be dismissed. As to the other plaintiff in error, Stuart Scott, the defendants to the writ will be permitted to join in error and both parties allowed to file briefs on the merits, if they see fit to do so.

Pleas of release of errors are sustained as to Harold and Francis Scott and the writ as to them dismissed.

*Pleas of release of errors sustained.*