[No. 32824. Department Two. October 1, 1954.]

ROYAL N. RIBLET *et al., Appellants,* v. SPOKANE-PORTLAND CEMENT COMPANY, *Respondent.*[1]

[1]Reported in 274 P. (2d) 574.

*A. O. Colburn* and *Harvey W. Clarke,* for appellants.

*John D. MacGillivray* and *Witherspoon, Witherspoon &
Kelley,* for respondent.

HILL, J.—This appeal concerns the amount of damages to
which the appellants, Royal N. Riblet and Mildred Riblet,
are entitled as the result of cement dust emanating from
the plant of the respondent, Spokane-Portland Cement
Company. For detailed factual background, see *Riblet v.
Spokane-Portland Cement Co.,* 41 Wn. (2d) 249, 248 P. (2d)
380 (1952). We there held that the operation of the cement
plant constituted an actionable nuisance but, since the two-
year statute of limitations applied, the Riblets were entitled
to recover damages only for the two-year period immedi-
ately preceding the institution of their action. Upon re-
mand to the superior court and after consideration of the
evidence taken both before and after the remand upon the
issue of damages, judgment was entered for nine hundred
seventy dollars.

The Riblets again appeal, contending that the damages allowed are grossly inadequate and that the trial court erred in refusing to allow damages for personal discomfort and annoyance.

The trial court found that the depreciation of rental value by reason of falling cement dust was thirty dollars a month, or seven hundred twenty dollars for a two-year period. Appellants, while claiming that these damages are grossly insufficient and inadequate, assign error, not to the propriety of measuring the damages in terms of the lessened use value or of employing the decrease in rental value as evidence of the decrease in use value, but on the theory that the trial court misunderstood the estimates of the expert witnesses and did not take into consideration all the evidence in making its determination.

The unusual character and the cost of the improvements on the Riblet property, together with the hypothetical situations involved in the determination of the depreciation in rental or use value of the property in consequence of falling cement dust during the particular two-year period in question, resulted in some confusion among the expert witnesses, or at least in a confusing record. However, the trial court's finding on the amount of damages on this phase of the case, *i.e.*, depreciation in the use and rental value of the premises, while seemingly low, is supported by substantial and credible testimony and will not be disturbed.

There is abundant testimony in the record concerning the various facilities on the Riblet property and the amount of loose dust which collected thereon. Appellants' witness, Orville Hubbell, estimated the cost of cleaning up the loose dust at ten thousand dollars. No other testimony relative to the cost of removal of this item was offered by either side. The trial court found that the cost of removal of the loose dust which had accumulated on the premises over the two-year period would be two hundred fifty dollars. As to Hubbell's estimate, the trial court remarked:

"Then, with respect to the testimony of the witness Hubbell, I think it is obvious that his estimate of the cost of

cleaning off the loose dust which probably, as has been testified to, was landed there during the two-year period—his testimony it would cost $10,000 is just sheer fantasy because based on his own—he simply guessed at that; it doesn't help the Court a bit—but based on his own figures, the top figure that I can arrive at on that cleaning job, figuring a total of 43 days, eight hours a day, for two men, figuring in the cost of operating the truck at $430 ($10.00 a day for the 43 days), figuring in 25% profit, and as far as the record shows that would include supervision and use of equipment; but assuming all that, the top figure comes to only $3300 and some dollars. And that is figuring two days where he figured a day, or perhaps more than a day, and so on.

"In short, we have two problems before the Court. One is the measure of damage; and two, is there any evidence in the record by which this can be taken out of the realm of fantasy and speculation and the Court fix a figure without just pulling one out of the atmosphere."

Hubbell testified that it would take two men two weeks to clear off eight hundred feet of three-foot sidewalk. His estimate for cleaning the swimming pool was that it would take two men a week. Mr. Riblet testified that he cleaned it every year himself and that it took him half a day to clean it and three quarters of a day to paint it, and that he had to have help to carry out a washtubful of sludge in buckets.

Appellants in their brief do not attempt to justify more than $3,360 of the Hubbell estimate. Even so, they figure on two men to work on the swimming pool for seven days, to do what Riblet testified took him half a day, with help to carry out the sludge.

■■ The trial court viewed the premises and, in addition to the evidence as to the area and the facilities from which the removal of dust was required, was clearly apprised of the extent of the removal job and in a position to know whether to give credence to Hubbell's estimates. It was within the court's province to pass upon the credibility of Hubbell's uncontradicted testimony, and the court was entitled to disbelieve it, particularly that part based upon opinion where there were facts and circumstances tending to discredit it. *Simmons v. Anderson*, 177 Wash. 591, 32 P. (2d)

1005 (1934); *Gilmartin v. Stevens Inv. Co.,* 43 W. (2d) 289, 261 P. (2d) 73, 266 P. (2d) 800 (1953); *Hawkinson v. Johnston,* 122 F. (2d) 724, 137 A. L. R. 420 (1941). See, also, 8 A. L. R. 796; 20 Am. Jur. 1030, 1059, Evidence, §§ 1180, 1208. The trial court having viewed the premises, its finding on such an issue as the cost of cleaning up loose dust is entitled to considerable weight. *Austin v. Bellingham,* 69 Wash. 677, 126 Pac. 59 (1912).

However, we will assume for the moment that appellants are correct in their contention that there is not "a scintilla of evidence" to sustain the finding that the cost of cleaning up the loose dust would be two hundred fifty dollars. Except for the testimony of Hubbell, which neither the trial court nor this court is willing to accept, there is then no evidence to substantiate any other figure for that item. Under such circumstances, they have no ground for complaint, the award of damages being more than nominal. *Gilmartin v. Stevens Inv. Co., supra.*

Appellants also urge that the trial court erred in failing to find that they are entitled to recover twenty-five thousand dollars as the cost of removal of the cement dust which had become permanently encrusted on their property during the two-year period. Their theory is that the total cost of removing the encrustation, which developed during an eleven-year period, would have been seventy-five thousand dollars in 1951 (as testified to by Hubbell, whose credibility has heretofore been discussed), and that, consequently, they are entitled to at least two elevenths of that amount, or $13,635, for the two years in question. However, they increase this figure to twenty-five thousand dollars because much more dust fell during the last five than during the first five or six years of the eleven-year period.

They rely upon *Dunseath v. Hallauer,* 41 Wn. (2d) 895, 253 P. (2d) 408 (1953), which was an action to recover damages for the total loss of an orchard due to excessive and long continued cold weather. We there upheld an award of ninety per cent of the value of the orchard, on the theory that damages to that extent had occurred subsequent to the

date on which the defendant in that case became liable for any loss. Examined in its proper perspective, that case is of no assistance to the appellants here. There the court was convinced that all except a very minor part of the damage to the orchard occurred subsequent to the particular date with which we were there concerned. In discussing that particular question, we said:

"The uncertainty here is not as to the fact of damage, which would be fatal to a recovery by a plaintiff, but as to the amount of the total damage that occurred after January 15th. We find ample support for the findings of the trial court that the orchard had, prior to January 15, 1949, suffered some minor winter damage due to the periods of cold weather prior to that date, but that it was the extended and continuous period of extremely cold weather from the middle of January to the middle of February that 'resulted in the fatal damage to the Malott Orchards.' That finding being supported by competent evidence, Dunseath was entitled to recover from the appellants even though a minor part of the total damage did occur prior to January 15th."

Actually, our doubt in that case was not whether the plaintiff had established that ninety per cent of the damage occurred after January 15th but whether the defendant had established that any measurable damage occurred prior to that date. We indicated that doubt in the next to the last paragraph of the opinion, where we said:

"In our opinion, if the trial court erred at all it was in finding that ten per cent (which seems high to us) of the total damage occurred before January 15, 1949."

■ In the instant case, the evidence is that the additional encrustation which occurred during the two-year period in no way changed the appearance or the usability of the property. The condition was the same on May 22, 1950, as on May 22, 1948, except that the encrustation was thicker. There is no evidence that the cost of removing the encrustation would have been any more at the end of the two-year period than at the beginning. On this phase of the case, the appellants failed to establish either the *amount* of the damage to their property during the two-year period

in question or the *fact of any measurable additional damage* during that period.

Appellants further assign error to the trial court's finding that:

"To award to plaintiffs [appellants] any damage for discomfort and annoyance resulting from the fall of cement dust over such two-year period in addition to awarding plaintiffs damage for the depreciation in the usable or rental value of their premises over such period would be to grant to plaintiffs, an award of double damages. In any event, there is not sufficient evidence in the record upon which the Court could base an award of damage on such items unless the Court were to engage in guess-work and speculation."

This assignment of error presents first a question of law as to whether the appellants are entitled to damages for discomfort and annoyance in addition to damages for depreciation in the use or rental value of the premises and, if that question is answered in appellant's favor, then a question of fact as to the extent of the damages proved.

We turn to the question of law, which is the subject of an exhaustive annotation in 142 A. L. R., beginning at p. 1307, where the problem is stated:

"The problem whether an occupant (owner or tenant) of real estate may recover damages for what may be regarded as personal injuries (consisting of inconvenience, discomfort, sickness, etc., actually experienced by him) in addition to, or separate from, damages to his property interests (such as diminution in rental or use value, or in market value, of the premises he occupies) presents interesting and perplexing questions. The plausibility of the argument that to allow both the property and the personal damages is to give double damages appears chiefly to arise from the circumstance that the same proof of discomfort, annoyance, etc., which has been actually experienced, and which tends to show that a nuisance exists, is relied upon to establish the injury to the plaintiff's property interests, as well as his claim for damages for personal discomfort, annoyance, etc. It seems, however, that there is a fallacy in disallowing the personal damages, the error perhaps arising in part from failure to bear in mind that the gist of a cause of action to recover damages for nuisance rests, not

on· the acts or omissions which produce the nuisance, but on the resulting damages to the plaintiff."

The annotator states the majority rule (p. 1322):

"The question whether an occupant of real estate (whether owner or not) may recover damages for discomfort, annoyance, etc., personally resulting to him from a nuisance, in addition to, or separate from, any sort of property damages, is most distinctly presented in cases where the claim for the personal damages is accompanied by a claim for depreciation in rental or use value of premises. In most jurisdictions the rule is that the personal damages are recoverable in addition to, or separate from, damages for diminution in rental or use value. This rule seems clearly to involve the idea that the law will not presume that one responsible for a temporary nuisance will continue it, and will not require the occupant of premises to abandon them to avoid consequences to his person."

█ This court has recognized that recovery may be had for "sickness, suffering, mental anguish and bodily infirmities" resulting from nuisance, in addition to property damage. *Champa v. Washington Compressed Gas Co.*, 146 Wash. 190, 262 Pac. 228 (1927). While we have never passed upon the precise question involved in the instant case, we believe that the majority rule as stated in the foregoing quotation from the A. L. R. annotation is sound and logical, and that the trial court erred in refusing to apply it in the instant case.

As pointed out in *Phillips Petroleum Co. v. Ruble*, 191 Okla. 37, 126 P. (2d) 526, 142 A. L. R. 1303 (1942), once the right to prove personal damages, as distinguished from property damages, is recognized and the injuries complained of (personal discomfort and annoyance) are classified as falling within the category of personal damages, the fact that those elements of damage do not involve actual bodily injury or illness indicates a difference only in the degree or amount of damage sustained. See, also, McCormick on Damages 503, § 127 and note 8.

In the instant case, the cement dust was the cause of both the depreciation in the use or rental value of the property

and the personal discomfort and annoyance suffered by the occupants. As stated in *Millet v. Minnesota Crushed Stone Co.*, 145 Minn. 475, 477, 478, 177 N. W. 641, 179 N. W. 682 (1920):

"A property owner, whose property is injured by a nuisance may recover for the property damage sustained. This is generally the diminished rental value, if the property be rented, or the diminished value of the use if the property be used by the owner.

"It is well settled that in an action for damages for maintaining a nuisance, recovery may be had for inconvenience, physical discomfort, and illness to the occupant of the property resulting from the nuisance. *Pierce v. Wagner*, 29 Minn. 355, 13 N. W. 170; 3 Sedgwick, Dam. § 948.

"This element of damages is something additional to the element of diminished rental value. *Berger v. Minneapolis Gaslight Co.*, 60 Minn. 296, 62 N. W. 336. Decisions to the contrary, such as *Swift v. Broyles*, 115 Ga. 885, 42 S. E. 277, 58 L. R. A. 390, are out of harmony with our decisions.

"We think, too, it is something additional to diminished value of the use, as that term is ordinarily understood. The value of the use is the value not to particular persons, who may be of peculiar susceptibility to injury, or who may be subject to peculiar conditions or situations, but is general value to ordinary persons for the legitimate uses to which it may be adapted, including, in this case, use as a homestead. That value is determined by taking into account the various facts and circumstances which make the use more or less desirable and in determining the extent to which a nuisance may have diminished such value, facts that naturally or reasonably tend to cause discomfort, annoyance or illness may be taken into account. *Gempp v. Bassham*, 60 Ill. App. 84; *Cohen v. Bellenot* (Va.) 32 S. E. 455; *Emery v. Lowell*, 109 Mass. 197. But the actual discomfort, annoyance or illness, which has resulted in damage or injury to the particular occupant involved, is another and distinct element of damage. This distinction is not clearly brought out in the decided cases, but we think it is recognized and it seems to us logical and just."

We are also convinced that the trial court erred in finding that there was insufficient evidence on which an award for damages for personal discomfort and annoyance could be based. Although the fall of cement dust usually

was imperceptible, not being detected by sight, smell, or sound, as is usually the case when nuisance involves dust, gas, smoke, noise, etc., its effects soon became apparent to the physical senses. One cause of discomfort was the need to keep the windows of the sleeping rooms closed because the sleepers' "nostrils would be kind of filled up in the morning," and, as Mr. Riblet testified, "We just had a feeling that our nostrils were breathing dust." We think, too, that it can be inferred, even if not testified to in explicit terms, that cement dust on tables, chairs, automobiles, etc., was an annoyance. Sludge on the bottom of the swimming pool, which caused Mr. Riblet to slip and slide and made it impossible to walk in the pool on the rare occasions when he used it in 1948 and 1949, created both a discomfort and an annoyance. The testimony reveals that drawings in Mr. Riblet's drafting room were constantly covered with cement dust, and when he was inking a drawing dust would collect on the pen and blur the drawing, which clearly constituted an annoyance.

Admittedly, no one testified to damages in consequence of personal discomfort and annoyance in terms of dollars and cents, but the fact that no one has placed a monetary value on personal discomfort and annoyance does not make the damage speculative or conjectural. It is recognized that the determination of the extent of the discomfort and annoyance to plaintiffs, and the amounts which will reasonably compensate them for such injuries, rests largely in the discretion of the jury. *Baltimore & Potomac R. Co. v. Fifth Baptist Church,* 108 U. S. 317, 27 L. Ed. 739, 2 S. Ct. 719 (1883); *Frick v. Kansas City,* 117 Mo. App. 488, 93 S. W. 351 (1906); *Oklahoma City v. Tytenicz,* 171 Okla. 519, 43 P. (2d) 747 (1935); 2 Wood on Nuisances (3d ed.) 1314, Damages, § 866. Since the record contains evidence of personal discomfort and annoyance suffered by the appellants, it was the duty of the trial court, when sitting without a jury, to determine the damages sustained in consequence thereof. As said by the supreme court of California in *Judson v. Los Angeles Suburban Gas Co.,* 157 Cal.

168, 172, 106 Pac. 581 (1910), where smoke, odors, and noise disturbed the plaintiff:

"In the very nature of things the amount of detriment sustained is not susceptible of exact pecuniary computation. It is for the court to say what sum of money the plaintiff should receive in view of the discomfort or annoyance to which he has been subjected."

When this case was first before the court, we distinguished the case of *Powell v. Superior Portland Cement, Inc.,* 15 Wn. (2d) 14, 129 P. (2d) 536 (1942), and held that it was not controlling. It should in all fairness be noted that, on this phase of the damages, we arrive at a conclusion seemingly at variance with the views expressed by the judges who joined in a concurring opinion in that case. This has not been done without a careful weighing of the reasons given.

Because of the expressed view of the trial court that there is no evidence to sustain any judgment for personal discomfort and annoyance, it would serve no good purpose to remand the case for further consideration of those elements of damage. In our judgment, appellants are entitled to one thousand dollars as damages for personal discomfort and annoyance suffered during the two-year period, and we tentatively dispose of this issue by directing that the judgment be modified by increasing the damages in that amount.

This is done in the hope that further litigation may be obviated, and not with the intention of depriving either appellants or respondent of the right to relitigate that issue. In the event that either party, within ten days of the filing of this opinion, asks that a new trial be granted, confined solely to the issue of the amount of damages for personal discomfort and annoyance during the two-year period, we affirm the judgment for nine hundred seventy dollars and direct a new trial limited solely to the issue indicated.

In either event, appellants will recover their costs on this appeal.

The period for the filing of a petition for rehearing (and this reference is not an invitation) will begin ten days after

the filing of this opinion, because our disposition of the case is subject to change within that period.

GRADY, C. J., SCHWELLENBACH, DONWORTH, and WEAVER, JJ., concur.

