WYOMING WOOL MARKETING ASSOCIA-
TION, a Corporation, Appellant
(Plaintiff below),

v.

William WOODRUFF and H. D. Bischoff,
individually and as co-partners, Appellees (Defendants below).

No. 3034.

Supreme Court of Wyoming.
June 5, 1962.

James P. Horiskey (of Ellery, Hickey, Rooney & Walton), Cheyenne, for appellant.

J. D. Fitzstephens (of Goppert & Fitzstephens), Cody, for appellees.

Before BLUME, C. J., and PARKER, HARNSBERGER, JJ., and STANTON, D. J.

Mr. Justice HARNSBERGER delivered the opinion of the court.

Wyoming Wool Marketing Association, a corporation, formerly Wyoming Cooperative Wool Marketing Association, hereinafter called the Association, sued William Woodruff and H. D. Bischoff, individually and as a partnership, for an alleged deficiency of $9,153.32 arising by reason of the difference between the moneys advanced to the partners and the net receipts from sale of their wool, together with interest thereon, and claimed to be due the Association under the terms of a marketing agreement dated June 7, 1951. By this agreement the partners, as defendants will hereinafter be designated, appointed the Association as their exclusive agent to sell all wool of their 1951 clip; agreed the Association might use the services of the National Wool Marketing Corporation to carry out its agency; authorized the National Wool Marketing Corporation to sell the wool in its own name and collect the proceeds; and consented that "in the conclusive discretion" of the Association or the National Wool Marketing Corporation the wool might be graded, classified or commingled with similar wools of other growers. On its part, the Association agreed to sell the wool, together with wool received from other growers, through the National Wool Marketing Corporation, and to pay the partners ratably the amount received from the sale of the wool, less advances, interest thereon, transportation, handling and marketing costs, as well as certain other items not important here.

Thereafter on August 25, 1952, the parties executed a further instrument in which it is recited that the partners had delivered or would deliver on or before November 30, 1952, approximately 31,876 pounds of shorn wool, grease weight, to the Association and National Wool Marketing Corporation, the latter being referred to as the "Handler," and the partners certified such wool to be free of liens except that of the First National Bank of Powell, Wyoming, which, in writing, waived its lien.

The acceptance by the National Wool Marketing Corporation of any consignment of the wool does not appear.

In defense, the partners admitted the execution of the agreements of June 7, 1951, and August 25, 1952, and that the Association had advanced the partners a total of $22,313.20, pleaded the statute of limitation, and alleged that the partners were damaged by the negligence of the Association in its marketing of the wool. The trial court considered the negligence defense as a counterclaim although not designated as such.

The partners' motion for summary judgment was denied. The case was tried to a jury and in one of the instructions given, the court directed a verdict in favor of the Association for the sum of $9,153.32 with 4 per cent interest from January 26, 1953 (which sum was the amount plus interest the evidence showed was the difference between advances made to the partners less the net receipts from their wool), unless the jury found the partners were damaged by the Association's negligence, in

which event the jury was told to deduct the amount of damages found from the $9,153.32, and the balance should draw interest at the rate of 4 per cent per annum from January 26, 1953. The court also instructed the jury relative to the partners' claim for damages because of alleged negligence of the Association. After the jury retired it submitted to the court the following question:

"Do we have to determine the amount of damage if decided in favor of defendants?"

The court then instructed the jury:

"If you use the form of verdict which finds generally for the defendants and against the plaintiff you are finding damages to the defendants to be $9,153.32 or more.

"If you find the damages to the defendants to be less than $9,153.32 then you should use the form of verdict where you fill in the amount of damages.

"If you find no damages to the defendants, then you should use the form of verdict which finds generally in favor of plaintiff and against defendants in the sum of $9,153.32 with interest."

The jury returned its verdict as follows:

"We, the jury, duly impanelled and sworn to try the issues in this case, do hereby find generally in favor of the Defendants and against the Plaintiff in this case."

Whereupon the court entered judgment accordingly.

Following entry of this judgment, the Association moved " * * * to set aside the verdict and the judgment against the Plaintiff entered thereon and to enter judgment for the Plaintiff in accordance with its motion for a directed verdict * * *", or, in the alternative, for a new trial. The court by its order denied the motion, and it is from this order that appeal is taken.

The Association contends: (1) There was insufficient evidence upon which the jury could properly find the Association negligent, (2) the jury's verdict was necessarily speculative, (3) the court erred in giving and refusing certain instructions, and (4) negligence, if any, would be imputed to defendants as well as to plaintiff.

In furtherance of the contention that there was insufficient evidence upon which the jury could properly find the Association was negligent in its disposal of the partners' wool, the Association attacks the trial court's admitting in evidence a copy of a letter written by an officer of the Association in which it is stated:

" * * * It is noteworthy that we have disposed of 80 per cent of our 1951 consignment with a top of $1.56 per pound or an over all average of $1.16 per pound net to the grower."

The letter was objected to by the Association as being immaterial, incompetent and irrelevant, but was received over those objections.

■ As the partners received only approximately 45⅔ cents per pound net, the Association's statement that the average of its sales of 1951 consignments netted growers $1.16 was certainly relevant, material and competent evidence as bearing on the issue of the Association's negligence in selling the partners' wool. Therefore, the letter's admission in evidence was not error. When the partners' wool was received by the Association on June 6, 1951, the failure of the Association to dispose of it within a reasonable time thereafter, so that it would have participated in sales which netted other consignors a much higher average price, was a circumstance which, unless explained or refuted, warranted the jury's conclusion that the Association had been negligent in its efforts to fulfill the duties of its agency respecting the partners' wool. See McCormick on Evidence, § 239, pp. 502-503.

The appellant relies a great deal upon Justice v. Brock, 21 Wyo. 281, 131 P. 38, rehearing 21 Wyo. 298, 133 P. 1070. In

that case it was said at 21 Wyo. 293, 131 P. 41:

"* * * In the case before us the evidence shows that the method of selling the wool was to exhibit it to proposed buyers, and that this was done. * * *"

The court then observed:

"* * * There may have been wool of the same or higher quality sold at the market quotations, but that fact of itself would not be sufficient to entitle the defendant to recover if the factor was diligent and in good faith endeavoring to sell defendant's wool. * * *"

From the conclusion reached in Justice v. Brock, it seems clear that the court there adopted as the criterion upon which to test the alleged negligence of the factor, not whether there was a higher market value for the wool during the time when the factor had it for sale, but, whether the factor's efforts in offering it for sale to available customers were sufficient to fulfill his duty to be diligent in the grower's interest. The opinion also points out that the factor was not an insurer of sale or price; that because the grower failed to instruct the factor when to sell, it would be presumed that the grower had approved the factor's action in not selling at any particular time, and, therefore, the grower should not be heard to complain if the grower suffered loss. Insofar as these concepts apply in the instant case, we do not disagree with them.

But the distinguishing difference between the Justice case and that now before this court is that the decision in Justice turned upon whether the wool should have been sold at the market price, while here it turns upon whether diligence was shown in handling the partners' wool when the Association admitted it had sold wool consigned to it during the period from June 6, 1951, to approximately October 25, 1951, within which time it had control of the partners' wool and returned to its other consignors an average net return of $1.16 as compared to the approximate 45⅔ cents returned to the partners. It was not the market price which measured the Association's performance of its duty, but what was actually done about the partners' wool when the Association was doing better with the wool of its other consignors.

The per curiam opinion upon petition for rehearing in Justice v. Brock, 21 Wyo. 298, 133 P. 1070, made it plain that where there was evidence tending to show lack of diligence on the part of the factor which was left unexplained, that of itself might be sufficient to justify a finding of negligence.

However, in the case now before us, we not only have the unqualified admission of the Association that some 80 per cent of all the 1951 consignments which the Association had received up to near the end of October had actually been marketed so as to bring the growers a net return of not less than $1.16 on the average, but in addition there was an exhibit showing the 1951 season average price of Wyoming wool was $1.15 per pound and another exhibit showing that wool brought $1.15 per pound as of June 15, 1951, $1.05 per pound as of July 15, 1951, 73 cents per pound as of August 15, 1951, and 65 cents per pound as of September 15 and October 15, 1951. Also the Association's officer testified the government cancelled its wool purchases in May of 1951, and from that time there was a drastic and steady decline in wool prices. As the partners' wool was received by the Association on June 6, there was ample opportunity for the Association to take advantage of the $1.15 price per pound which continued at least until June 15. Added to these facts, when in July the price dropped to $1.05 per pound that sharp change in the market indicated an even more dangerous decline, and in the face of this combination of circumstances an alert and diligent factor should have acted upon the warning and realized further delay in selling would be disastrous for its principal. So while the admission concerning the sale of 80 per cent of its other consignments was substantial prima facie evidence that the partners' wool could have been and probably should have been sold to

net them the $1.16 net return, there was other circumstantial evidence which fortified the partners' prima facie showing.

In Benedict & Co. v. Inland Grain Co., 80 Mo.App. 449, 456, where the factor held the commodity in face of a falling market, the court said:

> " * * * And long delay, in view of a falling market, is evidence to go to the jury on the question whether or not the factor has exercised sound discretion, good faith and reasonable diligence. Field[Feild] v. Farrington, 10 Wall. 151 [19 L.Ed. 923]. * * *"

Standing uncontradicted by any competent evidence, this prima facie showing was sufficient to establish for all purposes the existence of the negligence charged, Scott v. Scott, 304 Ill. 267, 136 N.E. 659, 307 Ill. 586, 139 N.E. 70. It was sufficient to satisfy the partners' burden of proof, Amtorg Trading Corporation v. Commissioner of Internal Revenue, 2 Cir., 65 F.2d 583, and to support the verdict of the jury in favor of the partners, Little v. Dolvin, 25 Ga.App. 264, 103 S.E. 35; Eckman Chemical Co. v. Chicago & N. W. Ry. Co., 107 Neb. 268, 185 N.W. 444; 32 C.J.S. Evidence § 1016, p. 1041.

■ Notwithstanding it was the partners' burden to prove the Association was negligent in its marketing of the partners' wool, when such a prima facie case of negligence was established by the Association's admission it had sold 80 per cent of all wool consigned to it in 1951 at a much more favorable price than that finally returned for the partners' wool, by its admission that as early as May it knew of the government's cancellation of wool order and it was faced with a falling market, yet as late as June 15 the market held at $1.15, and as late as July 15 it was still $1.05 per pound, the burden devolved upon the Association to show facts which would relieve the Association from liability, if that were possible. See 22 Am. Jur., Factors, § 66, p. 344, citing H. L. Brown & Son v. Funck's Estate, 89 Kan. 601, 132 P. 202, Ann.Cas.1915A, 174. This prima facie evidence of the Association's negligence in making sale of the partners'

wool created an issue of that fact to be submitted to the jury. 22 Am.Jur., Factors, § 67, p. 344, citing Usborne v. Stephenson, 36 Or. 328, 58 P. 1103, 48 L.R.A. 432, 78 Am.St. Rep. 778.

■ The Association does not even try to explain or excuse its delay in selling the partners' wool by claiming it was influenced by the fact it had made advancements. As no such excuse for the delay was made, it must be concluded the instant case should be considered as if no advancement had been made. Benedict & Co. v. Inland Grain Co., supra.

Nor can it be said, under the circumstances present in this case, that there is justified any presumption that the partners gave their implied approval to the delay in selling their wool, as they had every right to believe the Association would be diligent and alert to their interests. Any different conclusion would strain justice and be unreasonable.

The only semblance of evidence which the Association offered to explain why the partners' wool did not participate in the average net returns which were received by other growers is the answers of an official of the Association to interrogatory, when he said, "Efforts were made to sell this clip" and "but a sale at any reasonable price could not be made," and upon cross-interrogatory, when he said, "No offers were made for the Woodruff-Bischoff according to my best recollection as no opportunity presented itself to sell the wool." There was also a statement in a letter dated March 15, 1954, from the Manager of the Association to the partners which stated:

> " * * * there was never a time after your wool was received on June 6, 1951, that it could have brought near the advance made on it. In fact, there was practically no market for free wools.",

and the further statement:

> " * *. * at no time since the wool was received could it have been sold at a higher value * * *."

None of these answers or statements is evidence of facts which tended to show any diligent effort was made by the Association to sell the partners' wool. At best they were mere opinions and of no more evidential value than the bare conclusions of their authors. That testimony was of a type essentially the same as that disapproved in Stormon v. Weiss, N.D., 65 N.W.2d 475, 509, where a witness said the testatrix "was too sick a woman to make a will." The court said the statement "was obviously a conjecture or conclusion and had no probative force as evidence * * *."

■ However, irrespective of the fact that the statements of the Association's officers were unacceptable as proof because they were only the conclusions and opinions of the witnesses, the jury was not bound to believe or accept them, even though they were not directly contradicted, especially as there were facts and circumstances to the contrary disclosed by the record. The weight to be given the testimony of the Association's officers was a matter for the jury to determine, and the jury was entitled to take into account the interest of the witnesses in the outcome of the litigation. Bullock v. Gay, 296 Ky. 489, 177 S.W. 2d 883; Ligon v. Redding, 300 Ky. 326, 188 S.W.2d 483; Stormon v. Weiss, N.D., 65 N.W.2d 475; Patterson v. Blair, 123 Utah 216, 257 P.2d 944; Riblet v. Spokane-Portland Cement Co., 45 Wash.2d 346, 274 P.2d 574; Annotation, 62 A.L.R.2d 1191, § 4, 1198; 20 Am.Jur., Evidence, § 1180, p. 1031, 1961 Supp., p. 186. And this is especially true where their testimonies were opposed to the other facts and circumstances in the case which indicated a better market was available for sale of the wool during the time it was placed with the Association. Moeller v. St. Paul City Ry. Co., 218 Minn. 353, 16 N.W.2d 289, 156 A.L.R. 371; Burns v. Radoicich, 77 Cal.App.2d 697, 176 P.2d 77; Teresi v. Filley, 146 Neb. 797, 21 N.W. 2d 699; Janssen v. Kohler, 71 N.D. 247, 299 N.W. 900; Ironside v. Ironside, 188 Okl. 267, 108 P.2d 157, 134 A.L.R. 621; Beck v. Givens, 77 Wyo. 176, 309 P.2d 715, 313 P.

2d 977; Annotation, 62 A.L.R.2d 1191, § 6, 1207. The statement of the court in Riblet v. Spokane-Portland Cement Company, 45 Wash.2d 346, 274 P.2d 574, 576, where the court was the trier of fact, is especially in point:

"* * * It was within his [trial judge's] province to pass upon the credibility of Hubbell's [interested witness'] uncontradicted testimony, and he [trial judge] was entitled to disbelieve it, particularly that part based upon opinion where there were facts and circumstances tending to discredit it. Simmons v. Anderson, 1934, 177 Wash. 591, 32 P.2d 1005; Gilmartin v. Stevens Investment Co., 1953, 43 Wash.2d 289, 261 P.2d 73, 266 P.2d 800; Hawkinson v. Johnston, 8 Cir., 1941, 122 F.2d 724, 137 A.L.R. 420. See, also, Kelly v. Jones, 290 Ill. 375, 125 N.E. 334, 8 A.L.R. 796; 20 Am.Jur. 1030, 1059, Evidence, §§ 1180, 1208. * * *"

■ The entire circumstances as shown by the record, including the admissions contained in the letter heretofore discussed, the exhibits showing average prices of wool during the applicable period, the Association's knowledge of the falling market condition, and the failure of the Association to produce evidence showing any affirmative activity on its part in seeking and soliciting sales of the partners' wool, all created strong evidence that the Association had not performed its duty to be alert and diligent in the interest of its principal. This brings the case before us squarely within the rule announced in the early case of Govan v. Cushing, 111 N.C. 458, 16 S.E. 619, 621, where the court quoted with approval:

"* * * It is true that, 'if the circumstances of the case raise a presumption that all has not been regularly performed, whether that presumption arise from positive or negative evidence, then it is incumbent to prove the due performance of the act required.' 2 Amer. & Eng. Enc. Law, 654, note. * * *"

This being so, the prima facie evidence of the Association's negligence arising from

the admissions contained in the letter referred to, the average prices received for Wyoming wools, the Association's knowledge in May of the market's falling prices, all remained unexplained and unabated, and consequently left that prima facie evidence to be accepted or rejected by the jury as it saw fit in deciding upon the question of the Association's negligence.

Although the delineation of the factor's obligation is not as clearly spelled out in the marketing agreement as might be desired, the law respecting the nature of the factor's undertaking is not uncertain. In Baldwin's Century Edition of Bouvier's Law Dictionary, 1926, p. 396, the definition of a factor is given as, "An agent employed to sell goods or merchandise consigned or delivered to him, by or for his principal * *", and respecting his duties, it is said, "He is required to use reasonable skill and ordinary diligence in his vocation; * * *."

■ The agency assumed by the Association was not merely to receive offers to buy the partners' wool. It undertook to be diligent in its efforts to *sell* the partners' wool. That obligation of the Association was not fulfilled by waiting for a customer to approach it with a proposal to purchase the wool. If the Association were to be relieved of the imputation of negligence arising from evidence that during the period the partners' wool was held, it was selling a major portion of wool consigned to it by others, at a price which gave other growers a net return of $1.16 per pound, it should have produced evidence that buyers were sought for the partners' wool and that offers to sell that wool to them were refused. The most that could justly be inferred from the evidence, offered in behalf of the Association in rebuttal of the evidence indicating its negligence, is that, in the face of a falling market, the Association decided any effort on its part to sell the partners' wool was useless and it elected to be quiescent and abandoned all effort to forestall loss to the partners.

■ The appellant next contends the jury's verdict was necessarily speculative.

There is little if any merit in this claim. In addition to the Association's admission of the $1.16 per pound net return to other growers, an exhibit in evidence showing the average price per pound received by Wyoming growers during the period June 15, 1951, to October 15, 1951, may be computed as showing a mesne gross price of 84⅗ cents per pound. If that figure is used, and there be deducted therefrom the same handling, freight and other charges shown by the evidence as being used by the Association, the difference between the amount remaining and the amount actually returned to the partners would closely approximate the $9,153.32 found by the jury.

■ It is not the absence of evidence which affords exact computation of the money value of damages suffered through negligence of the party found liable which renders a verdict or judgment improper. It is sufficient if there is evidence which furnishes a basis from which a reasonable estimate of the money damage may be made. See Red Jacket Oil & Gas Co. v. United Fuel Gas Co., 4 Cir., 146 F.2d 645.

■ Damages in actions of this kind are more frequently than not incapable of ascertainment with mathematical exactitude. All that is required is a reasonable approximation by the court or jury if within the limits of the evidence furnished them. See Shrum v. Wakimoto, 70 Idaho 252, 215 P.2d 991.

Nebraska courts have adhered to the rule that where the law furnishes no legal rule for measuring damages, the award rests largely in the sound discretion of the jury and the court will be reluctant to interfere with its verdict. Benedict v. Eppley Hotel Company, 159 Neb. 23, 65 N.W.2d 224, 161 Neb. 280, 73 N.W.2d 228; Paddack v. Patrick, 163 Neb. 355, 79 N.W.2d 701. Texas follows the same rule. See Gillette Motor Transp. Co. v. Whitfield, Tex.Civ.App., 197 S.W.2d 157, affirmed 145 Tex. 571, 200 S.W. 2d 624. We, too, are reluctant to criticize such findings and feel that to do so in this case would be an unwarranted interference with the province of the jury. Much the same conclusion was reached in Rocky

Mountain Trucking Company v. Taylor, 79 Wyo. 461, 483, 335 P.2d 448, 455, when it was said:

"Even admitting that different minds might respond somewhat differently to the evidence in the record with respect to certain of the conclusions reached, we cannot say that the determinations made by the court were unsupported by any substantial evidence."

Appellant's criticisms of instructions given by the court relative to the negligence question are admittedly unsound in the face of the holding we make regarding the evidence of negligence. The further complaint that certain of the Association's instructions were refused is met by the fact that other instructions given sufficiently and properly covered the same ground.

The final point that contributory negligence must be imputed to the partners has already been answered where it is noted that there is no implied approval by the partners of the Association's failure to sell the wool; when in fact the Association was actually selling wool of others consigned to it at prices bringing an average net return to growers of $1.16 per pound.

No prejudicial error by the court or of the jury is apparent in the record, and the judgment is affirmed.

Affirmed.

McINTYRE, J., not participating.