## Bullock et al. v. Gay, Adm'r etc.

Feb. 1, 1944.

490

William C. Clay, Jr., and Henry H. Bramblet for appellants.

Reid Prewitt and F. C. Bryan for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER
—Affirming.

Appellants are twelve physicians and surgeons composing a partnership, and operating under the style of The Lexington Clinic. They instituted this action to recover of the appellee, James E. Gay, administrator of the estate of Adelaide Gay Wood, for medical and surgical services rendered Mrs. Wood in her lifetime. The services rendered the decedent at her own instance commenced March 24, 1931 and ended May 21, 1936. The services rendered immediately prior to the decedent's death on August 16, 1941, were at the instance of her father and paid for by him, with the exception of a balance of $12 awarded plaintiffs by the jury who tried the case. By amended petition, the claim was based upon an express promise to pay the account, and an express acknowledgement by the decedent that the account was just, due, and unpaid. The Statute of Limitations applicable to contracts not expressed in writing

was pleaded as a bar to the plaintiffs' right to recover. The amount or reasonableness of the account was not made an issue, and the contest was fought solely upon the questions of whether the deceased acknowledged and promised to pay the account, and whether such promise was made within the five-year period before the commencement of the action. These issues were submitted to the jury under the instructions hereinafter discussed. The jury found for the defendant, as to the account commencing March 24, 1931 and ending May 21, 1936, to which part of the account alone the plea of limitation was addressed. It is contended that the judgment should be reversed because (1) the court erred in overruling plaintiffs' motion for a directed verdict in their favor; (2) the trial court should have admitted in evidence the plaintiffs' books of original entry, and also the claim filed by the plaintiffs with the debtor's administrator; and (3) the court erred in his instructions to the jury, and erred in declining to give to the jury the instructions offered by plaintiffs.

In support of the first contention, it is argued that, since the evidence for plaintiffs on the issue was without contradiction, such evidence constituted clear and convincing proof that an express promise to pay the claim and an express acknowledgement of the debt were made by the decedent, thus eliminating any issue of fact and resolving the question into one of law, requiring the court to direct a verdict in favor of the plaintiffs.

The general rule in respect to the weight to be accorded uncontradicted testimony is: If the witness is disinterested, and in no way discredited by other evidence, and the testimony is as to a fact not improbable or in conflict with other evidence, and is within his own knowledge, such fact may be taken as conclusive.. But such rule does not necessarily apply, if the uncontradicted evidence is given by interested witnesses. In this connection it may be said that the evidence, although uncontradicted, must be positive, clear, and unequivocal, and that the testimony must show the debt to have been revived by an explicit, direct, positive, and unequivocal acknowledgement or promise to pay. In 20 Am. Juris., Sec. 1180, p. 1030, it is said:

"Generally, testimony given by a disinterested witness, who is in no way discredited by other evidence, to a fact within his own knowledge, which is not in itself

improbable or in conflict with other evidence, is to be believed; and in many cases it is said that the facts so given are to be taken as legally established. It is often said that uncontradicted evidence must be taken as ·true and that as against a mere suspicion of falsity, the jury are not at liberty to disregard such evidence. It does not necessarily, follow, however, that a verdict or finding must be made in favor of the party introducing uncontradicted testimony, especially if such testimony discloses a variety of circumstances from which different minds may reasonably arrive at different conclusions as to the ultimate facts or if the uncontradicted evidence is that of interested witnesses. There are many cases illustrating the principle that the testimony of a witness, though uncontradicted, is for the triers of fact, whether court or jury, who are not bound thereby.

"* * * If such testimony is evasive, equivocal, confused, or otherwise uncertain, it may be disregarded.

"* * * It would seem clear that the fact that a person is interested in the outcome of the litigation may be taken into consideration in determining the weight to be gven to his testimony."

In Commonwealth Life Ins. Co. v. Pendleton, 231 Ky. 591, 21 S. W. (2d) 985, 986, 66 A. L. R. 1526, it is said: "An uncontradicted witness may be so evasive, equivocal, confused, or otherwise uncertain as to make his credibility essentially a question for the jury. * * *"

The only witness who testified as to the promise to pay is M. B. Jacoby, business manager for The Lexington Clinic. Mr. Jacoby is paid a straight salary for his services, and his compensation is not calculated directly upon the amount of money collected by the Clinic on the accounts of the doctors composing the partnership. He is, however, the supervisor of such accounts, and is charged with the duty of collecting them. It is not unreasonable to infer that the tenure of his position depends to some extent upon his success in collecting accounts for the firm. That being true, he was, legally speaking, an interested witness and at least indirectly, if not directly, interested in the outcome of the suit. A fair statement of his testimony is succinctly stated in the opinion rendered by the trial court in·support of his decision to submit the case to the jury, and which was rendered at the time he overruled the motion for a new trial. The statement follows:

"Mr. Jacoby testified that the decedent promised on more than one occasion to pay the debt. Sometime this promise was to begin paying on it as soon as she could and sometimes to make monthly payments on it, other times to pay when she was able; but there is no evidence that the decedent ever saw the account or was apprised of its amount or acknowledged the account to be correct. The nearest thing that is shown by the testimony as to any information that the decedent had as to the amount of the account was that of Mr. Jacoby to the effect that the office record showed that the account had been sent to the decedent. The proof does not show when these records were made or how the information was furnished to the decedent or by whom the account was sent and of course cannot be considered as evidence that the decedent was notified of the amount of the account or acknowledged it.

"In addition to this the account shows from May 21, 1936 there was no charge until August 14, 1941 and which later date was but two or three days before the death of the decedent, and further that on September 22, 1936 Mr. Jacoby entered a reduction on the account of $20.00. He claims that this reduction was made so that the account would not get larger. This may have been doubted by the jury in view of the fact that the decedent was no longer being treated by the plaintiffs and that the deduction was made approximately three months after the last visit of the decedent to be treated and which might have indicated in the minds of the jury an effort to stop the running of the statutes of limitations."

We might add that it is extremely difficult to determine what part of Mr. Jacoby's testimony was given from his own knowledge and information, and what part of it was taken from records made by persons other than himself. But it is certain that he testified as assuredly and positively in respect to facts which he admitted he had learned by mere hearsay, as he did to those which he asserted were within his own ken. Mr. Jacoby further testified that there was no other person present at any time the decedent promised to pay the account. It will readily be seen that, in that character of case, it is utterly impossible to refute or contradict in any wise the testimony introduced by the plaintiffs. Had the person who it was alleged made the promise

been living and capable of testifying at the trial, and refused to deny the evidence given by plaintiffs' witness, the court would have been justified in finding, as a matter of law, that the promise to pay had been made. But where death has sealed the lips of the only other witness, and the witness testifying is shown to have an interest in the case, we think the findings in respect to the facts testified to should be left to the jury. That being true, Jacoby's testimony does not, as a matter of law, assume the aspect of certainty, nor can it be said, as a matter of law, that it is not sufficiently confusing as to render it susceptible of disbelief. Therefore, under the rules recited above, the court properly submitted the question, both as to the new promise and the acknowledgement, to the jury.

The court refused to permit the plaintiffs to introduce evidence as to the accuracy of the claim in respect to the services rendered, and the reasonableness of the charges made therefor. If his refusal to admit this evidence could be construed to be an error, it certainly was not prejudicial, because the court instructed the jury, in the event they found for the plaintiffs, to find for the full amount claimed. It likewise was not error on the part of the court to refuse to admit in evidence the claim and affidavits in support thereof presented to the administrator. The attorney for the administrator testified that the claim had been presented, and upon his advice had been rejected by the administrator, thus eliminating any issue on that point.

The plaintiffs offered four instructions, in the following words and figures:

"1. The Court instructs the jury that if they believe from the evidence, that the services mentioned in the petition and evidence were rendered by the plaintiffs to the decedent, Adelaide Gay, under a contract either expressed or implied, or with the intention on the part of the plaintiffs to charge and an intention on the part of the decedent to pay for such services, and if the jury further believe that the decedent acknowledged the debt or promised to pay the plaintiffs their claim within five years before the commencement of this action, then they should find for the plaintiffs the reasonable value of such services not exceeding $788.00, with 6% interest thereon from September 3, 1941, the amount claimed in the petition.

"II. The Court instructs the jury that if they believe from the evidence, that the services mentioned in the petition and evidence were rendered by plaintiffs to the decedent, Adelaide Gay, under a contract either expressed or implied, or with the intention on the part of the plaintiffs to charge and an intention on the part of the decedent to pay for such services, and if the jury further believe that, on or about August 16, 1942, the decedent paid or caused to be paid the sum of $25.00 on her account with the plaintiffs, then they should find for plaintiffs the reasonable value of such services not exceeding $788, with 6% interest thereon from September 3, 1941, the amount claimed in the petition.

"III. The Court instructs the jury that if they believe from the evidence that the services mentioned in the petition and evidence were rendered by the plaintiffs to the decedent, Adelaide Gay, under a contract either expressed or implied, or with the intention on the part of the plaintiffs to charge and an intention on the part of the decedent to pay for such services, and if the jury further believe that the decedent acknowledged the debt or promised to pay the plaintiffs their claim within five years after said claim became due and again within five years before the commencement of this action, then they should find for the plaintiffs the reasonable value of such services not exceeding $788, with 6% interest thereon from September 3, 1941, the amount claimed in the petition.

"IV. The Court instructs the jury that if they believe from the evidence that the services mentioned in the petition were rendered by the plaintiffs to the decedent, Adelaide Gay, under a contract either expressed or implied, or with an intention on the part of the plaintiffs to charge and an intention on the part of the decedent to pay for such services, and if the jury further believe that the decedent admitted the justice of the debt within five years after said claim became due and again within five years before the commencement of this action, then they should find for the plaintiffs the value of such services not exceeding $788.00 with 6% interest thereon from Sept. 3, 1941, the amount claimed in the petition."

The court refused the instructions, to which ruling of the court an exception was taken. The instructions as given by the court recite:

## "Ins. No. 1

"The court instructs the jury that the action of the plaintiffs in so far as the amount covered by this instruction is concerned is barred by the statute of limitation and they should find for the defendant unless they believe from the evidence that the decedent, Adelaide Gay, acknowledged the debt or promised to pay the plaintiff or his agent his claim within five years before the commencement of the action, to-wit: September 11, 1942, and in that event they should find for the plaintiffs; but to revive the debt the promise or acknowledgement of the debt must be explicit, direct, positive and unequivocal. If they should find for the plaintiff under this instruction, they will find for them the sum of $776 with interest thereon from September 3, 1941.

## "Ins. No. 2

"If the jury believe from the evidence that the plaintiffs rendered to the decedent, Adelaide Gay, medical services in the sum of $37.00 during the month of August, 1941, they will find for the plaintiffs the sum of $12.00, being the amount claimed subject to a credit of $25.00 acknowledged to have been paid.

## "Ins. No. 3

"Nine of the jury may make a verdict but if less than the whole number agree, those agreeing must sign same."

The instructions as given were more favorable to the plaintiffs than the ones offered by them, with the exception of offered Instruction No. II. The instructions offered presented issues as to whether the services were rendered, and, if rendered, whether they were rendered with the intent to charge therefor, or were received by the decedent under a contract, express or implied, with an intention on her part to pay therefor; and presented the further issue as to the reasonableness of the value of the services rendered. Those issues presented by each of the instructions offered were eliminated by the court in favor of the plaintiffs. Instruction No. 1, as given by the court, covered the points sought to be covered by plaintiffs' offered Instructions I, III, and IV, which were material to the issue involved. Instruction No. II offered by plaintiffs was based upon a contention wholly without support in the evidence, and was properly rejected. Instruction No. 1

given by the court contains the following admonition: "But to revive the debt the promise or acknowledgement of the debt must be explicit, direct, positive and unequivocal."

While we think that this part of the instruction may have been eliminated without prejudice to the rights of the defendant, nevertheless it does no violence to the law in respect to the character of promise or acknowledgement of a debt necessary to be shown to avoid the Statute of Limitations; it therefore was not prejudicial to the substantial rights of the plaintiffs. The question turned upon the testimony of Mr. Jacoby. Had the jury given credence to this testimony, they, under the instructions, could not have found for the defendant.

The judgment is affirmed.