# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: JUNE 25, 2009
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

FINAL

2008-SC-000767-WC

DATE 7/16/09 _Kelly Klaber D.C_

CLARENCE HICKS                                                    APPELLANT


ON APPEAL FROM COURT OF APPEALS
V.                      CASE NO. 2007-CA-002609-WC
WORKERS' COMPENSATION BOARD NO. 06-78469


R & J WELL SERVICE; HONORABLE CHRIS
DAVIS, ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION BOARD                                   APPELLEES


## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

An Administrative Law Judge (ALJ) awarded the claimant a period of temporary total disability (TTD) and medical benefits for a temporary exacerbation of a pre-existing back condition but dismissed the claim for permanent income and medical benefits, including benefits for a proposed surgery. The Workers' Compensation Board affirmed the ALJ. A divided Court of Appeals affirmed.

We affirm. Although the Court of Appeals' dissent viewed this claim as being for a gradual work-related injury, the claimant did not allege such an injury. He alleged an injury from a specific work-related incident on August

18, 2006, that produced permanent impairment and precipitated the need for surgery. The ALJ's decision that the incident caused no permanent harm was reasonable under the evidence and properly affirmed.

The claimant was born in 1965 and completed the 9th grade. He worked as a laborer in a slaughterhouse until 1997 or 1998, when the defendant-employer hired him to work as a rig operator. His application for benefits alleged that he injured his back, shoulders, arms, head, and legs on August 18, 2006, while lifting and moving a well head that weighed about 150 pounds. The employer admitted that the alleged injury "occurred or became disabling on August 18, 2006." It accepted the claim "as a temporary exacerbation of a pre-existing condition" but denied that the incident caused a permanent impairment rating.

The claimant testified that he lifted the well head from a truck on August 18, 2006, and fell to his knees in pain as he turned while holding it. Unable to finish his shift, he was taken to the hospital and later referred to Dr. Potter, his family physician. The claimant admitted that Dr. Potter treated him for intermittent low back and leg pain for about one year before the incident; that he ordered an MRI and nerve conduction study; and that he took him off work for one or two days in early August 2006 due to back and leg pain. He did not recall the medication that Dr. Potter prescribed but testified that it changed after the injury at work. He stated that Dr. Potter referred him to Dr. Bean, who recommended surgery. The claimant testified that he worked up to eighty

hours per week before the injury but that increased pain after the injury prevented him from working.

An August 21, 2006, treatment note from Dr. Potter indicated that the claimant reported the incident at work and complained that he had been unable to work due to back, shoulder, and arm pain. Dr. Potter diagnosed acute lumbosacral pain that radiated into the right leg and acute cervical pain that radiated into the right arm. He took the claimant off work and ordered medication, physical therapy, and a lumbar MRI.

A Form 107 indicates that the claimant gave Dr. Potter a history of experiencing intermittent low back pain for two to three years before the injury. Dr. Potter treated such complaints in February, May, July, and August 2006, before the injury. The claimant reported that he missed a few days of work during that period but denied missing more than a week at a time. He underwent an MRI that revealed a right L5-S1 disc protrusion in July 2006 and a nerve conduction study that was normal early in August 2006. Dr. Potter noted that he recommended a neurosurgical evaluation by Dr. Bean on August 7, 2006, but that Dr. Bean did not see the claimant until after the injury.

Dr. Potter attributed the claimant's present complaints to his injury, explaining that they resulted from years of cumulative trauma and repetitive strain in his work. The lower back symptoms manifested gradually at work early in 2006 and the August 18, 2006, injury was superimposed on the pre-existing, work-related L5-S1 disc herniation, severely exacerbating it. Dr. Potter assigned a 13% permanent impairment rating, stating that no active

3

impairment existed before the injury. In his opinion, the claimant lacked the physical capacity to return to the type of work performed on the date of injury. He stated in an addendum that the claimant had not reached maximum medical improvement (MMI) because he had not undergone the surgery that Dr. Bean recommended or exhausted all reasonable therapeutic interventions such as epidural injections.

Dr. Bean began to treat the claimant's back condition on September 25, 2006. When he failed to improve with conservative treatment, Dr. Bean recommended surgery to repair an L5-S1 disc herniation and relieve the right hip and leg pain. A letter to the employer's claims examiner dated December 7, 2006, indicates that he agreed with Dr. Jenkinson that there was some symptom magnification, but he disagreed that the claimant had reached MMI from the work-related injury with no permanent impairment. A supplemental report indicated that the claimant's permanent impairment rating was 10% presently but that he was not at MMI because he continued to experience back, right hip, and right leg pain. Absent the recommended surgery, he would be restricted to light duty.

When deposed by the claimant, Dr. Bean stated that the August 18, 2006, injury aroused a pre-existing condition that was evident on the pre-injury MRI scan. He acknowledged that the claimant missed some work before the injury due to back pain but noted that he was able to continue to work until after the injury. He explained that the claimant did not experience the type of pain that corresponded to the MRI finding until after the injury. Thus,

he thought that the injury caused the disc to protrude further and put sufficient pressure on the nerve to cause the pain and warrant surgery.

Dr. Bean stated on cross-examination that the back condition was active before the injury because the claimant had undergone diagnostic studies since 2001 for back pain, but it was non-disabling because he was working. Moreover, it was dormant in the sense that the right leg pain was not constant. He acknowledged that the report of the nerve conduction study noted a few months' history of pain and paresthesia down the right leg to the foot. When asked about the amount of active impairment that existed before the injury, he responded that it depended on the extent and duration of his leg pain. He explained that the claimant would have warranted a 10% pre-injury impairment rating if he had radiculopathy, even if he was able to work. Although he would have warranted a 5% pre-injury impairment rating if he had only back pain or if he had leg pain that lasted a brief period before subsiding, he would have warranted a 10% rating if the leg pain lasted three to six months (i.e., if it became chronic). Dr. Bean testified on re-direct examination that the 10% impairment rating would be divided equally if the claimant had only intermittent back and leg pain before the injury but constant pain thereafter.

Dr. Templin evaluated the claimant for his attorney in February 2007. He noted that Dr. Potter's records showed complaints of back and right leg pain that dated to March 2001 and that treatment did not resume until five years later in February 2006. Dr. Templin diagnosed chronic low back pain, disc herniation at L5-S1, disc desiccation at L4-5, and right leg radicular

symptoms. He stated that the injury of August 18, 2006, exacerbated the pre-existing lumbar disc herniation with radicular symptoms, noting that the claimant was able to work despite the herniation until the incident at work. Nonetheless, he apportioned the entire 8% impairment rating to "an active and symptomatic preexisting lumbar disc herniation." He imposed extensive restrictions and stated that the claimant lacked the physical capacity to return to the type of work performed at the time of the injury.

Dr. Jenkinson evaluated the claimant for the employer in November 2006. He agreed with Dr. Bean that the MRI revealed an abnormality at L5-S1; however, he interpreted the test as showing degenerative changes but no significant disc herniation. He noted that the claimant's symptoms were diffuse rather than the specific symptoms that would be expected from a small herniation at L5-S1 on the right. In his opinion, the claimant showed excessive pain behavior and signs that were consistent with symptom exaggeration. He assigned a 0% impairment rating to the injury and stated that the claimant could return to work without restrictions.

Dr. Best reviewed the claimant's medical records for the employer, noting the history of pre-injury complaints. He also noted that the emergency room records from August 18, 2006, refer to back pain experienced at home a day earlier but fail to mention increased pain from a work-related injury. He concluded that the incident at work caused at most a temporary exacerbation of the pain. Although he assigned a 5% permanent impairment rating, he attributed it entirely to a pre-existing active condition rather than the injury.

The parties preserved the following contested issues: extent and duration of disability; pre-existing active condition; compensability of surgery; interlocutory medical and temporary total disability (TTD) benefits; and date of MMI. The ALJ noted in a statement before the hearing that the claim was being bifurcated and that the parties wanted to be certain to include "injury as defined by the Act" among the contested issues. Counsel for both parties agreed.

After reviewing the evidence, the ALJ noted that the primary question to be resolved was whether the incident on August 18, 2006, exacerbated the pre-existing back condition and precipitated the need for surgery. The ALJ determined that the claimant's back condition existed before August 18, 2006, and that he failed to prove more than a temporary exacerbation of the condition. The ALJ based the decision on Dr. Jenkinson's report, Dr. Bean's testimony acknowledging the existence of a pre-existing condition, the absence of an objective change of condition on diagnostic testing, and the fact that Dr. Potter recommended a neurosurgical consultation before the injury occurred. The ALJ concluded as follows:

> [T]he ALJ will determine that Hicks [sic] condition is a pre-existing active condition. Hicks has failed to carry his burden of showing that the work-related temporary exacerbation resulted in any permanent impairment or need for permanent medical treatment. His injury is not work-related and his claim is dismissed.

The ALJ awarded TTD benefits as paid voluntarily and also awarded medical benefits for "the effects of the temporary exacerbation to the low back injury," specifically excluding the recommended surgery.

7

The claimant's petition for reconsideration asserted that a fair reading of Dr. Bean's testimony left no doubt that the work-related injury caused an increase in symptoms and the need for surgery. He requested additional findings regarding the decision to characterize his entire permanent impairment as a pre-existing, active condition. He also asserted that the decision contained a patent error regarding the conclusion that his injury was not work-related. The ALJ denied the petition and the claimant appealed.

A divided Court of Appeals affirmed, with a concurring opinion characterizing the result as being draconian but required by the Workers' Compensation Act. A dissenting opinion stated that the claimant suffered a gradual injury and took issue with the majority's "unbending adherence to the deference owed the ALJ," which reduced the substantial evidence test "to a mere 'scintilla of evidence' test." The claimant appeals.

Relying on the concurring and dissenting opinions, the claimant argues that this case presents an opportunity for the court to reconsider precedent regarding active versus dormant impairment disability. He also complains that Chapter 342 requires an ALJ's decision to be affirmed if even a scintilla of evidence supports it. He argues that Dr. Bean's uncontradicted testimony compelled a finding that at least a portion of his disability was compensable; that Dr. Jenkinson's testimony did not support the ALJ's refusal to apportion his permanent impairment rating; and that substantial evidence did not support the decision to deny the requested surgery. We disagree.

Only reasonable findings of fact may be affirmed on appeal.[1] The claimant did not allege a gradual work-related injury that became manifest on August 18, 2006, although Dr. Potter's report would have supported such an allegation. Thus, authority concerning multiple injuries or a gradual injury is inapplicable. The claimant alleged an injury that occurred in a specific work-related incident on August 18, 2006. He maintained that the incident resulted in permanent impairment and precipitated the need for surgery. Having reviewed the evidence, we conclude that the ALJ's decision to the contrary was reasonable and properly affirmed.

All of the physicians, including Dr. Bean, acknowledged the existence of a degenerative back condition and herniated L5-S1 disc before the August 18, 2006, incident occurred. Dr. Bean's reports and direct examination attributed a worsening of the herniated disk, a change in the type of pain, and the need for surgery to the incident at work, but his testimony on cross-examination failed to indicate clearly that the injury caused a permanent change in the claimant's impairment. Dr. Bean acknowledged on cross-examination that any impairment due to leg pain would have been active if the claimant experienced chronic symptoms in his leg before the injury. Although the claimant testified that his leg pain was only intermittent before the injury and worsened after the injury, nothing required the ALJ to rely on his testimony.[2] Dr. Potter's pre-

---

[1] Special Fund v. Francis, 708 S.W.2d 641, 643 (Ky. 1986).

[2] Grider Hill Dock, Inc. v. Sloan, 448 S.W.2d 373 (Ky. 1969)(even the uncontradicted testimony of an interested witness does not bind the fact-finder); Bullock v. Gay, 296 Ky. 489, 177 S.W.2d 883 (1944).

9

injury treatment notes from February, May, July, and August 2006 refer to leg pain as well as back pain. Moreover, he considered the symptoms to be serious enough to warrant an MRI and nerve conduction studies and to refer the claimant to Dr. Bean although the actual appointment did not occur until after the injury. Considered together with testimony from Drs. Potter, Templin, Jenkinson, and Best, Dr. Bean's testimony did not compel a finding that the incident on August 18, 2006, caused a permanent harm that warranted permanent income or medical benefits, including the proposed surgery. Testimony from Drs. Templin, Jenkinson, and Best supported a conclusion that the incident caused a temporary exacerbation of the pre-existing condition but no permanent harm.

The ALJ awarded income and medical benefits based on a conclusion that the work-related incident caused a temporary exacerbation of the claimant's pre-existing back condition. After determining that the claimant failed to show that the incident caused any permanent impairment or need for permanent medical treatment, the ALJ stated, "His injury is not work-related and his claim is dismissed." When read in context, the latter statement appears to be no more than an inartful attempt to summarize the findings that the claimant's non-work-related back condition existed before August 18, 2006, and that he failed to show any permanent work-related injury. Thus, the ALJ dismissed the claim for permanent income and medical benefits.

The decision of the Court of Appeals is affirmed.

All sitting. All concur.

10

COUNSEL FOR APPELLANT,
CLARENCE HICKS:

Thomas Wayne Moak
Moak & Nunnery, PSC
P.O. Box 510
Prestonsburg, KY 41653


COUNSEL FOR APPELLEE,
R & J WELL SERVICE:

James Gregory Allen
Katherine Michelle Banks
Riley & Allen, PSC
106 West Graham Street
P.O. Box 1350
Prestonsburg, KY 41653