RENDERED:  FEBRUARY 23, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0712-ME

REBECCA SWITZER-PEMBLE                                        APPELLANT

v.

APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE A. CHRISTINE WARD, JUDGE
ACTION NO. 23-D-501286-001

LAWRENCE PEMBLE                                              APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  LAMBERT, McNEILL, AND TAYLOR, JUDGES.

LAMBERT, JUDGE:  Rebecca Switzer-Pemble appeals the Jefferson Circuit Court's May 18, 2023 order dismissing her petition for a domestic violence protection order (DVO).  After careful review of the briefs, record, and law, we affirm.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

The parties were previously married, and two weeks after their divorce in May 2022, Rebecca discovered eleven video cameras hidden throughout

her residence each of which was numbered out of thirteen on orange tape. Lawrence admitted to hiding the cameras to eavesdrop on Rebecca's conversations. The matter was then resolved privately via a January 2023 settlement agreement.

In April 2023, Rebecca discovered two additional hidden video cameras, one in her grandchildren's playroom and one in her dressing room. Because these cameras were not marked with orange tape, Rebecca argued Lawrence had unlawfully entered her residence and was spying on her anew. The underlying petition was filed, and a final hearing thereon was held May 18, 2023. In addition to the above, Rebecca testified at the hearing that Lawrence had made multiple unauthorized attempts to access her Ring external security cameras. She explained that, after filing this action, she transferred access to the Ring cameras from Lawrence to herself, and by the next day she was notified of four unauthorized access attempts.

The following exhibits were entered into evidence: pictures of the two cameras recovered from Rebecca's residence in April 2023, pictures showing where the cameras had been hidden, two emails dated April 22, 2023, from Ring reporting blocked attempts to set up her cameras, and two pictures taken from the Ring showing Lawrence on an unknown date during the summer of 2022 walking towards Rebecca's garage at 4:50:48 A.M. and walking back to his car six seconds

later.  Rebecca stated that she was afraid of Lawrence and she believed that without the DVO she would continue to be harassed or subjected to violence. Lawrence neither testified nor called any witnesses.

Concluding there was insufficient evidence that Lawrence had stalked Rebecca, the court dismissed the petition.  This appeal timely followed, and we will introduce additional facts as they become relevant.

## LEGAL ANALYSIS

A court may issue a DVO if, following a hearing, it "finds by a preponderance of the evidence that domestic violence and abuse has occurred and may again occur[.]"  Kentucky Revised Statutes (KRS) 403.740(1).  The preponderance of the evidence standard is satisfied if sufficient evidence establishes that the petitioner was more likely than not to have been a victim of domestic violence.  *Baird v. Baird*, 234 S.W.3d 385, 387 (Ky. App. 2007) (quoting *Commonwealth v. Anderson*, 934 S.W.2d 276, 278 (Ky. 1996)).  Domestic violence and abuse includes stalking, although that term is not defined by the statute.  KRS 403.720(2)(a).

On appeal, Rebecca argues that the court erred as a matter of law when it adopted the definition of stalking from KRS 456.010(8), located in the

Civil Orders of Protection Chapter,[1] instead of according the common and approved usage of the term as required by the general rules of statutory interpretation. Rebecca asserts this issue is preserved because we review the interpretation of a statute *de novo*; however, this is not correct. As the Court explained in *Fischer v. Fischer*, the *de novo* "standard of review does not mean that the appellate court is free to then address any and all legal issues that might affect the case. Rather, the court is bound to address only the question of law presented before a trial court[.]" 348 S.W.3d 582, 590 (Ky. 2011), *abrogated on other grounds by Nami Res. Co., L.L.C. v. Asher Land and Mineral, Ltd.*, 554 S.W.3d 323 (Ky. 2018).

In the proceedings below, Lawrence expressly argued that KRS 456.010 applied. Rebecca not only failed to challenge this assertion or insist, as she does on appeal, that the common meaning of the term stalking should apply, she conceded the matter when she asserted she satisfied the requirements of the statutory definition. Likewise, Rebecca did not object when the court announced its ruling applying the statutory definition. Accordingly, her claim that the court

---

[1] A practice approved by this Court due to the substantial similarities between the DVO and interpersonal protection statutes. *See, e.g.*, *Flintroy v. Gallegos-Esparza*, No. 2021-CA-0928-ME, 2023 WL 324617 (Ky. App. Jan. 20, 2023); *Kiser v. Kiser*, No. 2018-CA-000812-ME, 2019 WL 169204 (Ky. App. Jan. 11, 2019).

misapplied the law is not preserved and, as Rebecca has not sought review for palpable error, we do not reach its merits.

Next, Rebecca maintains that, regardless of how the court defined stalking, the denial of her petition was an abuse of discretion. Summarizing the applicable statutes, to be granted a DVO Rebecca was required to show that Lawrence intentionally engaged in two or more acts directed at her that seriously alarmed, annoyed, intimidated, or harassed her, that served no legitimate purpose, and that would cause a reasonable person to suffer substantial mental distress. KRS 456.010(8); KRS 508.130(1); KRS 508.150.[2] Additionally, Lawrence must

---

[2] Relevantly, KRS 456.010(8) defines stalking as "conduct prohibited as stalking under . . . KRS 508.150[, stalking in the second degree], or a criminal attempt, conspiracy, facilitation, or solicitation to commit the crime of stalking[.]"

Stalking in the second degree occurs when a person intentionally "[s]talks another person[] and [m]akes an explicit or implicit threat with the intent to place that person in reasonable fear of: 1. Sexual contact as defined in KRS 510.010; 2. Physical injury; or 3. Death." KRS 508.150.

Additionally,

> As used in KRS 508.130 to 508.150, unless the context requires otherwise:
>
> (1) (a) To "stalk" means to engage in an intentional course of conduct:
>
>> 1. Directed at a specific person or persons;
>>
>> 2. Which seriously alarms, annoys, intimidates, or harasses the person or persons; and
>>
>> 3. Which serves no legitimate purpose.

have made an implicit or explicit threat that was intended to place her in reasonable fear of sexual contact, physical injury, or death. KRS 508.150(1)(b).

Rebecca contends that, whether Lawrence recently installed the two cameras at issue, as she asserted below, or whether he merely failed to disclose to her that they remained undiscovered from the 2022 incident, the only reasonable inference is that Lawrence intended to continue monitoring her in her home. Likewise, she insists that Lawrence's prior access to the Ring account and the timing of the unauthorized access attempts after she discovered the hidden cameras was competent evidence of his intentional and repeated harassment. She reasons that his spying coupled with her averred fear of physical injury constitutes stalking and that the judgment must be reversed. Again, we disagree.

An "[a]buse of discretion occurs when a court's decision is unreasonable, unfair, arbitrary, or capricious." *Castle v. Castle*, 567 S.W.3d 908,

---

(b) The course of conduct shall be that which would cause a reasonable person to suffer substantial mental distress.

(2) "Course of conduct" means a pattern of conduct composed of two (2) or more acts, evidencing a continuity of purpose. One (1) or more of these acts may include the use of any equipment, instrument, machine, or other device by which communication or information is transmitted, including computers, the Internet or other electronic network, cameras or other recording devices, telephones or other personal communications devices, scanners or other copying devices, and any device that enables the use of a transmitting device.

KRS 508.130(1), (2).

915 (Ky. App. 2019) (quoting *Caudill v. Caudill*, 318 S.W.3d 112, 114-15 (Ky. App. 2010)). Here, the court was simply not convinced that Lawrence had hidden additional cameras, knew any remained in the residence, or accessed either the cameras or the Ring. Being mindful "that in reviewing the decision of a trial court the test is not whether we would have decided it differently," *Guenther v. Guenther*, 379 S.W.3d 796, 802 (Ky. App. 2012), we cannot say that the admittedly circumstantial evidence derived almost wholly from an interested party was of sufficient caliber to render the court's findings erroneous or its conclusions arbitrary. *See, e.g.*, *Bullock v. Gay*, 296 Ky. 489, 492, 177 S.W.2d 883, 885 (1944).

Finally, Rebecca argues the court rendered contradictory conclusions that are contrary to law. At issue is the court's statement that "even if [Lawrence] continued to access the remaining cameras in the home, this alone would not show an intentional course of conduct . . . under the stalking statute." As we have already concluded the court did not abuse its discretion in denying the petition, based in part on its finding that there was no evidence to support this allegation, we need not address this alternative reasoning.

## CONCLUSION

Therefore, and for the foregoing reasons, the judgment of the Jefferson Circuit Court is affirmed.

MCNEILL, JUDGE, CONCURS IN RESULT ONLY.

TAYLOR, JUDGE, DISSENTS AND DOES NOT FILE SEPARATE OPINION.


BRIEFS FOR APPELLANT:

Allison Spencer Russell
Shanna R. Balinger
Louisville, Kentucky

BRIEF FOR APPELLEE:

Philip M. Longmeyer
Louisville, Kentucky